The STATE ex rel. KARMASU, Appellant,

v.

TATE, Warden, Appellee.

[Cite as *State ex rel. Karmasu v. Tate* (1992), 83 Ohio App.3d 199.]

Court of Appeals of Ohio,
Scioto County.

No. 92 CA 2030.

Decided Oct. 29, 1992.

*Maharathah Karmasu,* pro se.

*Lee Fisher,* Attorney General, and *Robert W. Myers,* Assistant Attorney General, for appellee.

---

STEPHENSON, Presiding Judge.

This is an appeal from a judgment entered by the Scioto County Court of Common Pleas dismissing the petition for a writ of mandamus filed by Maharathah Karmasu, a.k.a. James Lee Paxson, petitioner below and appellant herein, against Arthur C. Tate, Jr., Warden of the Southern Ohio Correctional Facility ("SOCF"), respondent below and appellee herein. Appellant posits the following assignments of error for our review:

"I. The court made errors in reviewing only one argument[.]"

"II. The court errored [*sic*] in not properly construing an inmate *pro se* petition in the best interest of the filer."

"III. The court abused its discretion and errored [*sic*] in denying motion without a hearing."

"IV. The court errored [*sic*] in failing to determine if mandamus or injunctive relief was the proper relief[.]"

A short summary of the facts pertinent to this appeal is as follows. Appellant is an inmate incarcerated at SOCF. On November 8, 1991, he filed a rambling sixty-page petition for a writ of mandamus to be issued against appellee, commanding that certain acts be performed to assist appellant in the practice of his religious faith. On December 20, 1991, appellee filed a Civ.R. 12(B)(6) motion to dismiss the petition on the grounds that it failed to state a claim upon which relief could be granted. On December 27, 1991, the lower court entered judgment granting such relief and dismissed the petition. This appeal followed.

■ We begin our analysis from the well-settled proposition that, in order to establish the right to a writ of mandamus, a relator must demonstrate (1) a clear legal right to the relief prayed for, (2) that the respondent is under a clear legal duty to perform the requested act, and (3) that the relator has no plain and adequate remedy in the ordinary course of the law. *State ex rel. Evans v. Indus. Comm.* (1992), 64 Ohio St.3d 236, 238, 594 N.E.2d 609, 611, at fn. 2; *State ex rel. Fant v. E. Cleveland Mun. Court Clerk* (1992), 62 Ohio St.3d 530, 531, 584 N.E.2d 721, 722; *State ex rel. Westchester Estates, Inc. v. Bacon* (1980), 61 Ohio St.2d 42, 15 O.O.3d 53, 399 N.E.2d 81, at paragraph one of the syllabus. A failure to show any of these requisite factors will cause the petition to be denied.

■ In the cause *sub judice*, the petition was not denied on its merits, but rather dismissed for failure to state a claim upon which relief could be granted pursuant to Civ.R. 12(B)(6).[1] A petition in mandamus will be deemed to state a claim, for purposes of Civ.R. 12(B)(6), so long as it alleges the existence of a legal duty and the want of an adequate remedy at law. *State ex rel. Bush v. Spurlock* (1989), 42 Ohio St.3d 77, 80, 537 N.E.2d 641, 644; *State ex rel. Alford v. Willoughby* (1979), 58 Ohio St.2d 221, 224, 12 O.O.3d 229, 230, 390 N.E.2d 782, 785. In determining whether a mandamus petition sets forth a cognizable claim, the trial court must presume all factual allegations of the petition are true and make all reasonable inferences in favor of the nonmoving party. See *Mitchell v. Lawson Milk Co.* (1988), 40 Ohio St.3d 190, 192, 532 N.E.2d 753, 755. Dismissal is then proper only if it appears beyond doubt that the relator can prove no set of facts in support of his claim which would entitle him to relief. See *York v. Ohio State Highway Patrol* (1991), 60 Ohio St.3d 143, 144, 573 N.E.2d 1063, 1064; *O'Brien v. University Community Tenants Union, Inc.* (1975), 42 Ohio St.2d 242, 71 O.O.2d 223, 327 N.E.2d 753, at the syllabus. The judgment of dismissal will be reviewed *de novo* by the court of appeals, which will apply the same test in order to determine if dismissal was proper. See, *e.g., Clemets v. Heston* (1985), 20 Ohio App.3d 132, 134, 20 OBR 166, 167, 485 N.E.2d 287, 289; *Thomas v. Hart Realty, Inc.* (1984), 17 Ohio App.3d 83, 84, 17 OBR 145, 477 N.E.2d 668, 669.

With this standard in mind, we turn our attention to the fourth assignment of error wherein appellant argues, among other things, that appellee was under a clear legal duty to perform the requested acts set forth in his petition. These acts included (1) the provision of a special diet to accommodate appellant's religious faith; (2) the provision of fasting and alternate meal arrangements to accommodate his religious faith; (3) the provision of traditionally mandated foods

---

1. The Ohio Rules of Civil Procedure are applicable in special statutory mandamus proceedings, except for those instances where, by their nature, they would be clearly inapplicable. *State ex rel. Millington v. Weir* (1978), 60 Ohio App.2d 348, 349, 14 O.O.3d 310, 311, 397 N.E.2d 770, 772.

from his religion; (4) the allowance of his wearing "his Hindu Tuft of [h]air"; (5) the more frequent provision of razors to accommodate the shaving of body hair in compliance with his religious faith; (6) the provision of a Hindu rosary; (7) the provision of the sacred texts of his faith; (8) the cessation of administrative orders that he not speak of his religion or show books of his religion to other prisoners; and (9) that his religious name be used for prison administrative purposes.

After a thorough review of appellant's petition, we find merit only with respect to his claim that appellee has a duty to provide him with the sacred text(s) of his religion. The provisions of R.C. 5145.25 unequivocally mandate that "[t]he warden of the penitentiary *shall* furnish each convict of the penitentiary with a Bible * * *." (Emphasis added.) Although the word "Bible" usually carries certain Judeo–Christian overtones, it may broadly be defined as any book containing the sacred texts of a religion. See American Heritage Dictionary (1985) 175; Webster's Third New International Dictionary (1986) 211.[2] Thus, by statute, appellee has a clear legal duty to provide appellant with the sacred text(s) or bible of his religion.[3]

It would also appear that appellant has no plain and adequate remedy in the ordinary course of the law by which to enforce this mandate. Appellee counterargues that alternate injunctive relief or monetary damages could be sought or an institutional grievance be filed. However, we are not persuaded that monetary damages or an injunction would force compliance with the statute.[4] Moreover, appellant's petition states, among other things, that he "has exhausted all remedies * * *." Presuming this and other averments throughout the petition are true, and making all reasonable inferences in favor of appellant, *Mitchell, supra,* 40 Ohio St.3d at 192, 532 N.E.2d at 755, we construe the

---

2. We are compelled to give the term "Bible" this broad definition. Were we to limit the meaning of that term to the texts of the Christian religion, then Ohio's statute would impermissibly discriminate in favor of one religion and against all non-Christian religions. See *Cruz v. Beto* (1972), 405 U.S. 319, 322, 92 S.Ct. 1079, 1081, 31 L.Ed.2d 263, 268.

3. On remand, the trial court should endeavor to ascertain the *specific* identity of the "bible" of appellant's faith. There is no requirement in R.C. 5145.25 that appellant be provided with all written materials on his religion and there is nothing in this decision which should be so construed.

4. A writ of mandamus compels action or commands the performance of a duty, whereas a decree of injunction restrains or forbids the performance of a specified act. *State ex rel. Hensley v. Nowak* (1990), 52 Ohio St.3d 98, 556 N.E.2d 171; *State ex rel. Smith v. Indus. Comm.* (1942), 139 Ohio St. 303, 22 O.O. 349, 39 N.E.2d 838, at paragraph two of the syllabus. Thus, we are not persuaded that an injunction would be the proper means by which to enforce the statute.

allegations to mean that institutional grievances were filed and rejected.[5] Accordingly, this part of the petition set forth a cognizable claim for mandamus and it should not have been dismissed. The matter will be remanded for further proceedings on this limited issue.

■ However, we are not persuaded that there was any error in dismissing the remainder of the petition. Appellant's claim of a duty to provide access to religious text(s) was supported by a clear and specific statutory mandate. There does not appear to be any comparable basis of support for his remaining claims. Although appellant cites us to a number of general propositions to support his arguments, he appears to ultimately rely on the provisions of the First Amendment to the United States Constitution which state, in pertinent part, that there shall be no law prohibiting the free exercise of religion.[6] This guarantee, however, is insufficient to support a writ of mandamus on appellant's claims.

We concede that, while lawful incarceration may deprive a prisoner of certain rights he would otherwise enjoy in a free society, a convict does not loose all his rights upon entering the prison population. *In re Lamb* (1973), 34 Ohio App.2d 85, 87, 63 O.O.2d 153, 154, 296 N.E.2d 280, 283; see, also, *Nolan v. Fitzpatrick* (C.A.1, 1971), 451 F.2d 545, 547; *Coffin v. Reichard* (C.A.6, 1944), 143 F.2d 443, 445. It is beyond question that the rights retained by prisoners encompass the protections of the First Amendment, including those providing for the free exercise of religion. See *O'Lone v. Estate of Shabazz* (1987), 482 U.S. 342, 348, 107 S.Ct. 2400, 2404, 96 L.Ed.2d 282, 289. Our court has a profound respect for this fundamental right and, under most circumstances, will cast a critical eye on any government action interfering therewith.

Nevertheless, the "Free Exercise Clause" of the First Amendment sets forth only a vague prohibition against government action and does not specifically delineate those duties argued by appellant herein. More than two centuries after their adoption, constitutional jurisprudence of the religion clauses continues to evolve and even the justices of the United States Supreme Court cannot fully agree as to their meaning. See, *e.g., Lee v. Weisman* (1992), 505 U.S. ——, 112 S.Ct. 2649, 120 L.Ed.2d 467 (Establishment Clause); *Emp. Div. v. Smith* (1990),

---

5. This issue may be furthered pursued by appellee on remand. The established prison grievance system constitutes an adequate remedy at law. See *State ex rel. Burns v. Tate* (June 30, 1992), Scioto App. No. 91CA2011, unreported, at 5, 1992 WL 154141; see, also, *State ex rel. McGowan v. Cuyahoga Metro. Hous. Auth.* (1992), 63 Ohio St.3d 187, 586 N.E.2d 112. If appellant has, in fact, failed to previously avail himself of these procedures, then the claim could be disposed of on summary judgment.

6. This protection is applicable to the states through the Due Process Clause of the Fourteenth Amendment. *Cantwell v. Connecticut* (1940), 310 U.S. 296, 303, 60 S.Ct. 900, 903, 84 L.Ed. 1213, 1217.

494 U.S. 872, 110 S.Ct. 1595, 108 L.Ed.2d 876 (Free Exercise Clause). There is no indication that the rights and duties urged by appellant have sufficiently evolved from those provisions so as to support a writ of mandamus to compel their performance.

Moreover, we recognize that the practice of any religion, however orthodox its beliefs and however accepted its practices, will be subject to strict supervision and extensive limitations in a prison. *Sostre v. McGinnis* (C.A.2, 1964), 334 F.2d 906, 908. No romantic or sentimental view of constitutional rights or of religion should induce a court to interfere with the necessary disciplinary regime established by prison officials. *Id.* Accordingly, we decline to read into the Constitution those specific rights and duties urged on us by appellant.

■ The duty to be enforced by a writ of mandamus must be *specific, definite, clear* and *unequivocal.* 67 Ohio Jurisprudence 3d (1986) 218, Mandamus, Procedendo and Prohibition, Section 19. The provisions of the First Amendment to the United States Constitution are simply too vague to support the specific finding of those duties outlined by appellant in his petition. Thus, there was no error in the dismissal of the remainder of the petition and the fourth assignment of error is, accordingly, sustained in part and overruled in part.[7]

■ We now return to appellant's first assignment of error wherein he argues that the lower court erred in dismissing the petition solely on appellee's arguments without also considering his arguments. We disagree. A trial court is not required to consider any legal theory, or argument, beyond that which will adequately dispose of the case at hand. *Coulverson v. Ohio Adult Parole Auth.* (May 11, 1992), Ross App. No. 1790, unreported, at 4–5, 1992 WL 97805. As discussed above, most of appellant's claims could be disposed of under Civ.R. 12(B)(6) and, therefore, there was no need to address the specific merits of appellant's arguments. To the extent that the lower court should have considered such arguments with respect to the claim of access to religious text(s), we have already reversed the court's judgment on that issue and, thus, there was no prejudice. Accordingly, the first assignment of error is overruled.

---

7. Our decision should not be misinterpreted as holding that the underlying foundations of appellant's claims are wholly without merit. If true, some of his allegations may demonstrate an unconstitutional deprivation of religious rights. We hold only that appellant has generally chosen the wrong vehicle by which to vindicate those rights. Traditionally, judicial relief from improper religious discrimination or denial of religious rights has been found in declaratory, injunctive or monetary actions, as well as proceedings under the federal Civil Rights Act. See, generally, *Burgin v. Henderson* (C.A.2, 1976), 536 F.2d 501; *Cooper v. Pate* (C.A.7, 1967), 382 F.2d 518; see, also, Annotation, Provision of Religious Facilities For Prisoners (1967), 12 A.L.R.3d 1276, 1294.

■ In his second assignment of error, appellant argues that the trial court erred by not construing his petition so that it requested some other form of relief and thereby avoided dismissal under Civ.R. 12(B)(6). We disagree.

To be sure, this court has firmly rejected all notions that *pro se* litigants be held to the same standard as attorneys during trial court proceedings. See *Wright v. Miller* (Mar. 8, 1991), Highland App. No. 752, unreported, at 5, 1991 WL 37926. We have also ruled that considerable leniency *must* be afforded to *pro se* actions brought by prisoners. *In re Paxson* (July 1, 1992), Scioto App. No. 91CA2008, unreported, at 1–2, 1992 WL 154139. There is, however, a limit. Principles requiring generous construction of *pro se* filings do not require courts to conjure up questions never squarely asked or construct full-blown claims from convoluted reasoning. See *Beaudett v. Hampton* (C.A.4, 1985), 775 F.2d 1274, 1277.

■ Appellant's petition spans sixty pages and contains enough religious material to, as stated in his brief, provide "an in depth study of Hinduism equivalent to a high school course in theology." The petition is also replete with accusations and commentaries against SOCF personnel and references to Nazi Germany and the Soviet Union. Suffice it to say, this superfluous material detracts from the clarity of the petition and renders it extremely difficult to understand. We are, therefore, reluctant to hold that the trial court erred in not construing the pleading as anything other than the petition for mandamus by which it was titled.

Alternatively, appellant argues that the lower court should have appointed counsel to redraft the petition as a civil rights action and that failure to do so constituted an impermissible denial of access to the courts. Again, we disagree. Appellant relies on the cases of *Bounds v. Smith* (1977), 430 U.S. 817, 97 S.Ct. 1491, 52 L.Ed.2d 72, and *Wolff v. McDonnell* (1974), 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935, for the proposition that counsel should have been appointed to represent him in order to ensure that his *pro se* status did not effectively bar him from access to the courts. However, without discussing the merits of these cases, we note that they both involved federal civil rights actions commenced under Section 1983, Title 42, U.S.Code, and are therefore inappositive to the cause *sub judice*.

The action below was commenced in mandamus. Mandamus is a civil action. *State ex rel. Spirko v. Court of Appeals* (1986), 27 Ohio St.3d 13, 15, 27 OBR 432, 433–434, 501 N.E.2d 625, 626–627; *State ex rel. Wilson v. Preston* (1962), 173 Ohio St. 203, 19 O.O.2d 11, 181 N.E.2d 31, at paragraph one of the syllabus. There is, ordinarily, no right to appointment of counsel in civil cases. See *Roth v. Roth* (1989), 65 Ohio App.3d 768, 776, 585 N.E.2d 482, 487; see, also, *Ashton v. Ashton* (June 3, 1992), Ross App. No. 1775, unreported, at 12, 1992 WL 126215.

Appellant cites no authority which would require appointment of counsel in mandamus actions commenced in state courts, and we are not aware of any. Consequently, we discern no error in the trial court's failure to appoint counsel to represent him. The second assignment of error is overruled.

In his third assignment of error, appellant argues that the trial court erred in dismissing his petition without granting him a hearing to present evidence on his claims. We disagree. The dismissal was entered below under Civ.R. 12(B)(6) proceedings to dismiss the action for failure to state a claim upon which relief could be granted. During such proceedings, the trial court is confined *solely* to the averments of the petition and cannot consider matters outside the pleadings. See *Popson v. Henn* (1984), 17 Ohio App.3d 1, 7, 17 OBR 47, 53, 477 N.E.2d 465, 471; *Chautauqua Park Apartments v. McMullen* (Oct. 14, 1992), Highland App. No. 791, unreported, at 4, 1992 WL 303139; *Cook v. R.P.M. Auto Sales* (Nov. 26, 1991), Scioto App. No. 90CA1943, unreported, at 5, 1991 WL 260838. Thus, a hearing would have been improper. The third assignment of error is, accordingly, overruled.

Having sustained a portion of appellant's fourth assignment of error, the judgment of the trial court is affirmed in part and reversed in part. The claim in mandamus for access to Hindu religious text(s), or bible, is hereby remanded for further proceedings.

> *Judgment affirmed in part,*
> *reversed in part*
> *and cause remanded*
> *for further proceedings.*

GREY and PETER B. ABELE, JJ., concur.

GREY, Judge, concurring.

I concur in the judgment and opinion giving the broad construction to the word "Bible" so as to include any sacred text. But I think in remanding on the issue of the sacred texts, we should do so with the instruction that the petitioner be required to state which writing he wants.

In Hinduism, there are the Shivite and Vishnavite divisions much like the divisions among Protestant and Catholic Christians or Sunni and Shi'ite Muslims. Since there are also many volumes of sacred Hindu texts, like the Rig Veda or the Upanishads, it would be very difficult for a non-Hindu to decide what texts should be made available.

In remanding for access to the sacred Hindu texts, we ought to give the trial court some direction on the extent of relief to be allowed. It appears that petitioner is a Vishnavite and that he is asking for the Bhagava Gita. It also appears that he has other books, but that there are prison regulations limiting

the number of hardback books a prisoner may have and limiting access to the prisoner's property in storage, like books.

On remand, the trial court should require petitioner to state specifically which sacred texts he seeks and then to frame an order which will permit petitioner access to those texts equal to, but no greater than, the access allowed to any other prisoner.