KARMASU, Appellant,

v.

TATE, Warden, Appellee.

[Cite as *Karmasu v. Tate* (1994), 95 Ohio App.3d 399.]

Court of Appeals of Ohio,
Scioto County.

No. 2157.

Decided May 24, 1994.

Maharathah Karmasu, a.k.a. James Paxson, pro se.

Lee Fisher, Attorney General, and Robert W. Myers, Assistant Attorney General, for appellee.

PETER B. ABELE, Judge.

This is an appeal from a judgment entered by the Scioto County Common Pleas Court in a mandamus action. Maharathah Karmasu, a.k.a. James Paxson, plaintiff below and appellant herein, filed the instant action in November 1991, requesting the court to compel Southern Ohio Correctional Facility Warden Arthur Tate, Jr., defendant below and appellee herein, to perform certain acts to assist appellant in the practice of his religious faith.

On December 27, 1991, the trial court granted appellee's motion to dismiss the action. On appeal, this court found merit in only one of appellant's nine assignments of error. We held that appellee had a duty to provide appellant with the sacred text(s) of his religion. See *State ex rel. Karmasu v. Tate* (1992), 83 Ohio App.3d 199, 614 N.E.2d 827.

On remand, the trial court ordered appellant to indicate the specific texts to which he seeks access. Appellant submitted a list of sixty-six texts with an explanation of the relevance of each text. Appellant asserted that all sixty-six texts are necessary for the practice of his faith. On July 1, 1993, the trial court ordered appellee to provide appellant with one text, *Hindu Scriptures* by R.C. Zaehner.

Appellant assigns the following errors:

First Assignment of Error:

"Error was committed when the trial court disregarded the appellant's list of specific texts needed, which remained unopposed by respondent, and ordered that its own conception of the appellant's sacred scriptures be provided."

Second Assignment of Error:

"Error was committed when the trial court did not include in its order the texts described by appellant when the respondent failed to object to the listed texts."

Third Assignment of Error:

"Error was committed when the trial court ordered respondent to provide a discriminatory amount of scripture to a Hindu when compared to other faith provisions."

Fourth Assignment of Error:

"Error was committed when the trial court chose *Hindu Scriptures* by R.C. Zaehner as the text to be provided."

Fifth Assignment of Error:

"Error was committed when the trial court verred [*sic*] away from the appeal decission [*sic*] and into the realm of guru."

Sixth Assignment of Error:

"Error was committed when the trial court did not act in a manner that would end the controversy in question."

Because all six assignments of error relate to the trial court's refusal to order appellee to provide appellant with all sixty-six texts, we will consider the assignments of error together.

■ We note that when responding to the trial court's request to indicate which sacred texts he desired, appellant not only listed sixty-six texts, but also complained about the prison rule limiting each prisoner to three books in his cell. Appellant, noting that the prison contained numerous books for Muslims and Christians, explained that he was seeking more Hindu books for the prison library and chapel. We note that the majority of appellant's response to the trial court is unrelated to appellee's duty pursuant to R.C. 5145.25 and our previous order. We further note that the majority of appellant's brief on appeal is unrelated to appellee's duty pursuant to R.C. 5145.25 and our previous order. Accordingly, based upon the foregoing reasons, we overrule appellant's first, second, third, fifth, and sixth assignments of error.

■ In his fourth assignment of error, appellant contends the trial court chose the wrong text. Appellant argues that *Hindu Scriptures* by R.C. Zaehner is inadequate for use in the practice of his faith. Appellee counters that the trial court complied with our previous order to provide appellant with the Hindu "bible" pursuant to R.C. 5145.25.

In the prior appeal, we directed the trial court to "ascertain the specific identity of the 'bible' of appellant's faith." *State ex rel. Karmasu v. Tate* (1992), 83 Ohio App.3d 199, 203, 614 N.E.2d 827, 830, fn. 3. Although the trial court made a determination, we find nothing in the record to support the trial court's determination. Neither party submitted evidence on the issue of exactly what constitutes the Hindu "bible." We note *Hindu Scriptures* does not appear on appellant's list of sixty-six texts. In short, there is no competent credible evidence of any kind in the record to support the trial court's judgment. See, generally, *Myers v. Garson* (1993), 66 Ohio St.3d 610, 614 N.E.2d 742; *C.E. Morris v. Foley Constr. Co.* (1978), 54 Ohio St.2d 279, 8 O.O.3d 261, 376 N.E.2d 578, syllabus.

■ We are not sufficiently well versed in the Hindu religion to make a finding as to what constitutes the Hindu "bible." We are not prepared to take judicial notice on this question pursuant to Evid.R. 201. Upon remand, the trial court must determine what Hindu religious text or texts appellee must provide to appellant. We emphasize that the trial court's decision should be well grounded on evidentiary materials presented at a hearing or on affidavits, depositions or other evidentiary materials submitted by the parties.

■ We note that appellee is not foreclosed from presenting evidence in this matter. Appellee's counsel, an Assistant Attorney General based in Columbus, should have access to academic theologians or Hindu clergy in that city. Affidavits or other evidence provided by such experts would, no doubt, prove invaluable to the trial court in determining the identity of the Hindu bible.

Accordingly, based upon the foregoing reasons, we sustain appellant's fourth assignment of error.

*Judgment reversed*
*and cause remanded.*

STEPHENSON, J., concurs.

GREY, J., concurs in part and dissents in part.

GREY, Judge, concurring in part and dissenting in part.

I concur in part, but respectfully dissent in part, because of what I believe to be the precise issue in this case. This is an action in mandamus. Mandamus lies only to compel a state officer to perform some duty. In our previous opinion, we held that whatever other relief appellant might have been seeking, he had stated a claim under R.C. 5145.25, the section which says that a warden must provide each prisoner with a bible. In construing R.C. 5145.25 to carry out the intent of the legislature, we found the word "bible" to be used generically to mean the basic or primary sacred text.

On remand, the trial court directed appellant to state which sacred text he was seeking. In response, Karmasu submitted a list totaling sixty-six books. Most of his response was, of course, unrelated to the warden's duty set out in R.C. 5145.25 and unrelated to our previous order on remand. To that extent, the trial court erred, but only because Karmasu failed to specifically ask the court for any one book.

The majority opinion remands this case for a hearing on what constitutes the Hindu Bible because there is nothing in the record on that issue. I think we are imposing an impossible task on the trial court on remand: making a finding as to what is the most important book of Hinduism, comparable to the Christian Bible.

I am hardly more versed in Hinduism than the majority, but I do know that Hinduism is entirely nonhierarchical in its writings and practices. One Hindu's opinion as to what is sacred, and what is a sacred writing, is as good, and as valid, as any other's. No Hindu speaks with the voice of a pope, nor even with the authority of Christian synod or of a Muslim ulema. There can be no expert testimony on this issue.

Unlike the majority, however, I would not remand on the grounds of unfamiliarity with Hinduism, but instead would modify based on my familiarity with Ohio law. I find in the record that among the books sought by appellant was the *Bhagava Gita.* I would grant that specific request for relief.

Although there is no one Hindu text which is exactly comparable to the Christian Bible as that word was used by the legislature, the *Bhagava Gita* is

widely read and respected by members of the Hindu religion and is regarded by all religious scholars as an eminently important sacred text of Hinduism. This is also a book Karmasu asked for in his pleading. Granting the relief he himself has requested is not error. If that relief is not adequate, he might seek further action, but the burden is on him to prove that the warden has not complied with the statute.

I would find that if a warden has provided a Hindu prisoner with a copy of the *Bhagava Gita,* he has complied with R.C. 5145.25. I would, pursuant to the authority granted in App.R. 12, modify the order of the trial court. I would order the trial court to direct respondent to furnish petitioner with a copy of the *Bhagava Gita* in English translation. I would then affirm the judgment of the trial court as modified.