This matter presents a timely appeal from a judgment iendered by the Mahoning County Common Pleas Court, Domestic Relations Division, granting a divorce to plaintiff-appellant, Richard Jancuk, and defendant-appellee, Karen Elaine McHenry, awarding custody of the parties' minor child to appellee and allowing appellee to remove the minor child from the State of Ohio. It is noted that appellant has represented himself in this matter and has filed a number of briefs in this appeal.
The parties were married in New Zealand on August 5, 1989. A daughter, Karin Malika Jancuk (Karin), was born to the parties on August 22, 1989. On July 7, 1993, appellant filed a complaint for divorce in the Mahoning County Common Pleas Court, Domestic Relations Division. Appellee filed an answer and a counterclaim on August 17, 1993. The first temporary hearing was held on September 7, 1993, with both parties attending represented by counsel. The temporary hearing was continued a number of times.
Trial began on November 1, 1994 and continued through November 4, 1994, with a visiting trial judge presiding. By the time of trial, appellant had discharged three attorneys and was proceeding pro se. The trial court permitted appellant to Tepresent himself, but cautioned him numerous times that in his presentation of evidence he would be required to adhere to the same standards which applied to attorneys practicing before the trial court. During the trial, appellant was found guilty of contempt of court and was sentenced to ten days in the county jail.
The evidence at trial established that the parties lived in New Zealand after their marriage and that they instituted, but never concluded, dissolution of marriage proceedings in New Zealand. The evidence further showed that by joint agreement of the parties, appellee traveled to the United States in 1992 with Karin. Appellee testified that she had visited Hawaii, where she first met her current husband, Mr. Shinohara. She further testified that it was her intention to make the United States her residence and that she and Mr. Shinohara intended to get married and reside in California.
Appellee stated that when she was in South Carolina visiting her parents, appellant had arranged to come to South Carolina to pick up Karin and take her to Youngstown, Ohio for a visit with his mother. Appellee testified that appellant and their daughter were to spend one and a half weeks in Youngstown and then meet appellee at Disneyland in California, where appellant was to return Karin to appellee. Appellee stated that appellant did not return Karin to California as agreed.
Appellee testified that although appellant made several promises to bring Karin to California, he never returned her to appellee and during the next several months, appellee could not locate appellant or Karin. Appellee testified that she did not see Karin again until August of 1993. Appellee presented evidence to indicate that during this period of time, appellant traveled around the United States with Karin. Appellant's travels were illustrated by police reports which he had filed in Pittsfield, Michigan; Santa Fe, New Mexico; Lincoln, Nebraska; Konosha, Wisconsin; and Linesville, Michigan. The evidence further revealed that in January of 1993, appellant took Karin to psychologists in Chicago, Illinois and in Cleveland, Ohio. Appellant additionally took the child to see Charles Boris (Dr. Boris), a clinical psychologist located in Youngstown, Ohio and Dr. Boris initially believed that Karin had been sexually abused by friends of appellee.
The trial court, during these proceedings, appointed a guardianad litem for Karin. The guardian's report, filed with the trial court on November 2, 1994, indicated that Dr. Boris believed his initial evaluation of Karin was flawed as he would have proceeded differently had he known that appellant had a prior conviction for taking indecent liberties with a child. The guardian stated that there was no credible evidence found to support the allegations made against appellee. The story of sexual abuse which Karin told Dr. Boris was found to be the product of coaching by appellant and it was also noted that this type of manipulation could severely affect Karin's mental health.
The guardian testified at trial that appellee had been fully cooperative and that during her home visit, Karin and appellee evidenced a strong bond of love and affection. The guardian acknowledged that she was afforded the opportunity to speak to Karin alone at length and the child expressed a great deal of love toward appellee, appellant, and her paternal grandmother. The guardian further noted that Karin's teachers had never seen any signs of abuse or neglect and they informed her that Karin appeared to be well fed, appropriately dressed, and cleaner since entrusted to appellee's custody. The guardian concluded that Karin was a bright and loving child who showed no signs of abuse or neglect from appellee.
The guardian stated in her report that she had repeatedly attempted to contact appellant to schedule an interview and home study, but appellant ignored numerous phone messages and letters. Appellant claimed that he was too busy preparing his case and did not have time to speak to her. The guardian further pointed out that, in spite of her repeated attempts to contact appellant for discussion of the allegations and other matters involved in this case, appellant did not agree to meet with her until after the trial had started. The guardian found in her report that appellant "clearly evidenced psychological and/or emotional problems which have, and may continue to negatively impact Karin Malika Jancuk."
The guardian concluded that any shared parenting plan filed by either party would not be in the best interests of Karin and should not be accepted by the trial court and that allocation of parental rights and responsibilities should be designated to appellee. The guardian also suggested that the trial court dissolve its previous restrictions on appellee which limited her travel with Karin to the confines of Mahoning County. The guardian stated in her report that she believed it was in Karin's best interest for appellee to establish a permanent residency in California. The guardian recommended that presently, appellant should not be afforded companionship or visitation rights and that appellant should be ordered to undergo a complete psychological examination.
The trial court ultimately issued its judgment entry, designating appellee the residential parent and requiring her to make application to the trial court if she intended to relocate to another area. The trial court further held appellant's companionship or visitation rights in abeyance until appellant submitted to a psychological examination and made the report available to the trial court for consideration of the companionship issue.
Appellee subsequently made an application to the trial court stating her intention to relocate to another area, and a hearing was held on November 30, 1994. On December 5, 1994, the trial court issued a judgment entry including findings of fact, stating that appellee was permitted to remove Karin from the State of Ohio for the purpose of a home study by San Diego County Family Court Services. This home study completed by the family court services in San Diego, California was submitted to the trial court and found to be favorable. On May 17, 1995, the trial court adopted the December 5, 1994 judgment entry, including findings of fact, as its final order in this case. This appeal followed.
Appellant filed his original brief in this matter on September 15, 1995, but then filed a revised brief and later filed a two volume reply brief. Appellant has also filed numerous motions and notices, both before this court and the trial court. Prior to discussing appellant's arguments, it must be noted that they are disjointed and difficult to read.
Appellant sets forth six assignments of error on appeal.
Appellant's first assignment of error alleges:
 "The court caused grave error with its communications with the defendant and the guardian ad litem outside of the courtroom."
Appellant argues that the trial court abused its discretion by communicating with the guardian ad litem and appellee outside of the courtroom. Appellant contends that such communications violated the American Jurisprudence, Ohio Jurisprudence, Code of Judicial Conduct and Rules of the Domestic Relations Court of Mahoning County, revised 1992. Further, appellant maintains that the trial court admitted to speaking with someone regarding a November 2, 1994 visitation and submits that there were many outside communications between appellee and the trial court. Appellant also alleges that the trial court's use of the word "hostel" provides proof that the trial court spoke with appellee and/or her counsel outside of the courtroom. Based on these communications, appellant contends that he was denied fairness and due process since he was not a party to same.
There was nothing irregular or improper about the trial judge communicating with the guardian ad litem outside of the presence of either party. The trial court appointed the guardian to assist in making a decision with regards to Karin. Additionally, the trial judge's use of the word "hostel" does not itself indicate an ex parte communication with appellee. Rather, in a hearing conducted on September 7, 1993, appellee testified that she had stayed at a youth hostel when she was in Honolulu, Hawaii. (Tr. 14). This is the only time the word "hostel" appears in the transcript and the trial judge stated that she reviewed the entire record prior to trial.
Appellant has failed to point to any specific place in the record to support his allegations. App.R. 16 reads, in pertinent part:
 "(A) Brief of the Appellant. The appellant shall include in its brief, under the headings and in the order indicated, all of the following:
"* * *
 "(3) A statement of the assignments of error presented for review, with reference to the place in the record where each error is reflected.
"* * *
 "(6) A statement of facts relevant to the assignments of error presented for review, with appropriate references to the record in accordance with division (D) of this rule.
 "(7) An argument containing the contentions of the appellant with respect to each assignment of error presented for review and the reasons in support of the contentions, with citations to the authorities, statutes, and parts of the record on which appellant relies. The argument may be preceded by a summary.
"* * *
 "(D) References in Briefs to the Record. References in the briefs to parts of the record shall be to the pages of the parts of the record involved; * * *. Intelligible abbreviations may be used. If reference is made to evidence, the admissibility of which is in controversy, reference shall be made to the pages of the transcript at which the evidence was identified, offered, and received or rejected."
In a prior case on appeal involving the same parties, Jaucuk v.Jancuk (Nov. 24, 1997), Mahoning App. No. 94 C.A. 221, unreported, this court was confronted with the same situation, that appellant failed to comply with App.R. 16, and we stated as follows:
 "Appellant has failed to refer to the place in the record where any error is reflected, has failed to cite authorities, statutes, or parts of the record on which appellant relies, and has failed to reference the parts of the record involved or to the pages in the transcript where error may be identified. Although appellant is proceeding pro se, pro se
litigants are bound by the same rules and procedures as litigants who retain counsel. Meyers v. First National Bank of Cincinnati (1981), 3 Ohio App.3d 209, 210. See also Dawson v. Pauline Homes, Inc.
(1958). 107 Ohio App. 90. This court has, of course, made some allowances for pro se litigants, such as in the construction of pleadings and in the formal requirements of briefs. There is, however, a limit. "Principles requiring generous construction of pro se filings do not require courts to conjure up questions never squarely asked or construct full-blown claims from convoluted reasoning. Karmasu v. Tate (1992), 83 Ohio App.3d 199, 206. Furthermore, this court will not become appellant counsel for pro se litigants. Such action would be inherently unjust to the adverse party."
For the same reasons as set forth in Jancuk, supra, we find that appellant's arguments are not well-taken. Appellant's first assignment of error is found to be without merit.
Appellant's second assignment of error alleges:
 "The certificate of notice was improper and the court abused its discretion by accepting it as valid."
Appellant contends that notice of the November 30, 1994 hearing, served upon him by a process server, was improper. Appellant suggests that examples of the trial court's disregard were cited in his statement of the case, however, he does not point to specific examples in this assignment of error. Appellant argues that since he was out of town and received notice on Friday afternoon of Thanksgiving week for a hearing which was scheduled the following Wednesday, he never received the notice of hearing as stated in appellee's motion. Appellant concludes that the certificate of service in appellee's motion was faulty, thereby depriving him of due process and fairness since he could not get a lawyer on such short notice during a holiday period.
The appointment of a process server is an ordinary matter which often occurs in cases pending before a common pleas court and was proper in this case. In fact, the process server did effectuate service at appellant's residence. Furthermore, appellant's complaint that he did not receive notice until five days before the hearing did not prejudice him in any way. He did appear at the hearing and was given an opportunity to be heard.
Again, as with his first assignment of error, appellant did not comply with App.R. 16. He states that he provided this court with examples of the disregard which the trial judge had for him and her favoritism toward appellee, however, he did not cite to any specific examples in his argument. Accordingly, for the reasons contained in the discussion with respect to appellant's first assignment of error, appellant's arguments under this assignment of error are not well-taken. Even in fully considering appellant's arguments, we find that he was not denied due process of law, nor was he prejudiced in any manner since he appeared at the November 30, 1994 hearing and was given an opportunity to be heard.
Appellant's second assignment of error is found to be without merit.
Appellant's third assignment of error alleges:
 "The concepts of fairness and due process were violated."
Appellant claims that he was denied due process in being prohibited from preparing his case through discovery. Appellant complains that interruptions, threats, intimidations, and restrictions were used by the trial judge to direct the case in the manner she wanted. Appellant states that he was not allowed to question the validity of affidavits which he believes were wrongly considered by the trial court in conjunction with appellee's request to remove Karin from the State of Ohio. Further, appellant submits that without an investigation into Karin's new residence, he was unable to proceed with his arguments. Appellant suggests that there was an abundance of plain error in this case, and he did cite of number of cases regarding plain error. However, he failed to utilize such cases together with instances from the record to support his position.
The affidavits in question were attached to appellee's motion to remove the minor child from the State of Ohio and were statements made by friends and associates of Mr. Shinohara. The purpose of appellee's motion was to gain the trial court's permission to go to the State of California so that a home study, which was ordered by the trial judge, could be completed. The home study was completed and was favorable to appellee. Appellant has no standing to claim that the order was not valid. A review of appellee's motion and affidavits does not suggest any irregularities. In fact, since appellant has failed to point to any specific place in the record where an irregularity occurred, he has not complied with App.R. 16. Accordingly, for the reasons contained in the discussion with respect to appellant's first assignment of error, appellant's arguments under this assignment of error are not well-taken.
Appellant's third assignment of error is found to be without merit.
Appellant's fourth assignment of error alleges:
"The concerns of the child were ignored."
Appellant contends that his fundamental rights as guaranteed by the United States Constitution and by ruling of the United States Supreme Court in 1952 have been denied. In support of this argument, appellant merely states that the trial judge was prejudicial to him in mentioning anything of a religious nature or activity which took place within his church and concerned the minor child. Appellant claims the trial judge ignored the minor child's desire to attend her religious functions.
Appellant also asserts that the trial judge improperly believed the tender years doctrine was in effect and not rescinded by R.C.3109.03. Appellant points out that appellee was permitted to leave the state with the minor child in mid-term of a school year, without being able to say goodbye to him, her relatives and/or friends. Further, appellant maintains that the move to the State of California was for appellee's convenience only and had nothing to do with the best interest of the minor child. Finally, appellant asserts that a psychiatric or mental examination should have been completed by appellee in order to prove or disprove that she was emotionally unstable. Appellant concludes that the trial court violated R.C. 3109.051 and R.C. 3109.04.
Despite appellant's concerns, the trial court determined that it was in the minor child's best interest to live with appellee and specifically set forth its findings in reaching such decision. Appellant absconded with the minor child from January of 1993 through August of 1993 and it was appellee who was unable to see her during this time. Additionally, appellant had previously been convicted of taking indecent liberties with a child. These factors alone indicate that appellee was properly designated the residential parent. Further, the trial court ordered that visitation be held in abeyance until appellant completed a psychological examination, which he made no effort to complete. If appellant completes such examination and submits the results with the trial courts the trial court may then review such results and possibly award visitation privileges to appellant, which he could then legally enforce regardless of where Karin is located outside of the State of Ohio.
Furthermore, nothing in the record indicates that the trial court considered the tender years doctrine. R.C. 3109.04(B)(2)(c) provides as follows:
 "The interview shall be conducted in chambers and no person other than the child, the child's attorney, the judge, any necessary court personnel, and, in the judge's discretion, the attorney of each child's parent shall be permitted to be present in the chambers during the interview."
The trial judge, in the presence of the guardian ad litem, interviewed Karin pursuant to R.C. 3109.04. It is clear that the trial court and the guardian ad litem conducted the required interview with Karin pursuant to R.C. 3109.04. Appellant's complaint that he has been denied his rights pursuant to a United States Supreme Court decision is unsupported as he has presented no citation to any such case. Further, he has not presented any citation to the United States Constitution or the Ohio Constitution which would support his position. Therefore, appellant has failed to comply with the dictates of App.R. 16. Accordingly, for the reasons contained in the discussion with respect to appellant's first assignment of error, appellant's arguments under this assignment of error are not well-taken.
Appellant's fourth assignment of error is found to be without merit.
Appellant's fifth assignment of error alleges:
 "The abundance of irregularities before, during and after the trial make the judgment invalid."
Appellant maintains that a process server was appointed in this case to deliver notice of the hearing set for November 30, 1994, when there was never a need for one in the past. Appellant argues the process server was used so that he would receive notice only days before he would have to respond and therefore, would have no time to obtain his own lawyer or file his own motions. Appellant also complains that the trial judge's communication with lawyers outside the courtroom constituted an irregularity which prejudiced him. Further, since the visiting judge recused herself, appellant believes that it was improper for her to quash his subpoena.
Appellant's arguments are convoluted and make no sense. Under this assignment of error, appellant alleges that there was some type of conspiracy regarding the appointment of the process server, however, appellant has failed to point to anything in the record to support his allegations. Therefore, appellant has again ignored the requirements of App.R. 16. Accordingly, for the reasons contained in the discussion with respect to appellant's first assignment of error, appellant's arguments under this assignment of error are not well-taken.
Appellant's fifth assignment of error is found to be without merit.
Appellant's sixth assignment of error alleges:
"Proper judicial procedures were ignored and violated."
Appellant again argues that there were irregularities which occurred in the trial court and which denied him due process and fundamental fairness. Appellant's examples of such irregularities include the trial judge's refusal to accept motions from him; the trial court's failure to properly safeguard trial evidence; the trial court's loss of all exhibits after the trial; the trial court's loss of the original copies of four depositions; and, the trial court's loss of other document from the court file.
Appellant further complains that since the original trial judge recused himself and did not sign a judgment entry reappointing himself, he was without authority to appoint a guardian ad litem,
sign a judgment entry regarding a temporary hearing and/or sign a judgment entry allowing the minor child to stay in the State of California. Appellant believes that all of these actions amount to judicial error and poor judgment.
Appellant's list of improper procedures are unsupported by any citation to the record and therefore, do not meet the requirements of App.R. 16. Accordingly, for the reasons contained in the discussion with respect to appellant's first assignment of error, appellant's arguments under this assignment of error are not well-taken.
Appellant's sixth assignment of error is found to be without merit.
The judgment of the trial court is affirmed.
Donofrio, J., concurs.
Waite, J., concurs.
APPROVED:
 ________________________________ EDWARD A. COX, PRESIDING JUDGE