OPINION
Defendants-appellants, Robert and Karen White, appeal from an order of the Carroll County Common Pleas Court quieting title to a tract of land in favor of plaintiff-appellees, Purl and Ruth Ann Tinlin.
The origins of this case began with a dispute over the location of the boundary line dividing property owned by each of the parties.[1] Appellees acquired title to 1.07 acres of land in 1960 and to an additional 3.75 acres in 1974. Appellees purchased both parcels from the same seller. Appellants acquired title to adjacent property in 1992. Prior to any parties' acquisition of their respective allotments, the predecessors in title to each parcel constructed a fence along the purported boundary line. Appellees alleged that the predecessors in title agreed more than thirty years prior that this fence was constructed on the dividing line between the properties. Appellees claimed that they relied on this agreement when they constructed a barn which they believed to be situated entirely on their own property. In July of 1992, appellants had a survey done which revealed that the fence and appellees' barn actually encroached onto appellants' property.
On October 7, 1992, appellants filed suit against appellees seeking injunctive relief and damages and further seeking that the court order appellees to remove the barn and the fence. However, the suit was dismissed without prejudice by joint stipulation of the parties.
On April 28, 1993, appellees filed a complaint against appellants seeking a declaratory judgment. Appellees alleged that appellants removed the old fence and erected another along the boundary line as determined by their survey. Appellees requested that the court determine the boundary line and order appellants to remove the new fence and relocate it either to the location of the old fence or to some other boundary line as the court may establish. Appellees also requested that the court restrain appellants from harassing appellees and that appellants be ordered to remove the "No Trespassing" signs they allegedly placed upon the barn.
On June 28, 1993, with leave of the court, appellants filed an answer and counterclaim to appellees' complaint. In their answer, appellants admitted that they agreed to dismiss their prior claim and that they removed the old fence and erected a new one based on their survey. Appellants also admitted that they constructed this fence against the barn and that they requested that appellees keep their horses away from the fence. Appellants denied all other averments in the complaint.
In their counterclaim, appellants alleged that the old fence was constructed without their permission or the permission of any predecessor in title. Appellants also alleged that no agreement existed that the old fence established the boundary between the properties. Appellants requested that the court adopt the boundary lines as determined by their survey and order that the barn, or that part of the barn encroaching on their property, be removed. Appellants also requested relief from alleged harassment and from interference with quiet enjoyment of their land, claiming that appellees were dumping manure on to property claimed by appellants. Appellees did not file an answer to appellants' counterclaim.
On October 6, 1993, the parties filed an Agreed Judgment Entry granting appellees leave to file an amended complaint and granting appellants leave to file an amended answer and counterclaim. On that date, appellees filed an amended complaint which alleged that the predecessors in title to all of the parcels had constructed the fence on what was then agreed to be the dividing line between the parcels and that the appellees have owned at least a portion of their property in excess of thirty years. The amended complaint also alleged that the parties' predecessors in title recognized the old fence line as the accepted boundary between the properties for a period in excess of thirty years. Appellees also claimed that a survey conducted in July, 1992, revealed only slight variations from the accepted boundary line, including an irregularity of approximately five feet where the barn is located. The amended complaint further alleged that the new fence was constructed against the barn in a manner which denied appellees access around their barn. Appellees requested that the court establish the rights of the parties with respect to the properties, that it establish a dividing line between the parcels and provide any other necessary relief. Appellants did not answer the amended complaint within the statutory time period, as required in the Agreed Judgment Entry, filed October 6, 1993.
On November 3, 1993, the court filed a judgment entry, signed by counsel for both parties, stating that the parties had settled the matter and setting forth the terms of the settlement. The entry dismissed the case in its entirety with prejudice.
On February 3, 1995, appellants notified the court in writing that they had neither authorized nor had any notice of the settlement. Appellants also alleged that the judgment entry was based upon fraudulent information which their attorneys provided to the court. Appellants subsequently retained new counsel and moved for relief from judgment under Civ.R. 60(B)(5), which was denied by the trial court. Upon appeal to this court, Tinlin v.White (May 15, 1996), Carroll App. No. 653, unreported, 1996 WL 257505, we reversed, finding that the lower court abused its discretion in denying appellants' motion. This court remanded the matter for further proceedings.
Upon remand, a bench trial was scheduled for December 6, 1996. On that date, counsel for appellants filed a motion for leave to file an answer to the amended complaint. The motion did not set forth any reasons why the answer was late or why the court should grant leave. The trial court denied the motion. At trial, appellants' counsel orally noted for the record that appellees never filed a reply to appellants' counterclaim in the original complaint. Accordingly, appellants orally requested judgment on this counterclaim. After permitting counsel for both parties to proffer remarks for the record, the trial court took the matter under advisement.
In its Opinion and Judgment Entry dated January 27, 1997, the trial court found that by filing an amended complaint, appellees abandoned the averments contained in their original complaint, which thereby required appellants to answer the amended complaint. The court also denied appellants' motion for leave to answer the amended complaint, stating that appellants offered no proof of excusable neglect which is necessary by rule for leave to be granted. Since appellants did not answer the amended complaint, the trial court accepted as true the facts as contained within it. Thus, the trial court found in appellees' favor both on their amended complaint and as to appellants' original counterclaim. The court declared the old fence line as it existed prior to appellants' 1992 survey to be the boundary line between the properties.
Appellants appealed that decision to this court and we affirmed. See Tinlin v. White (Sept. 20, 1999), Carroll App. No. 680, unreported, 1999 WL 771277. After our decision, on September 23, 1999, the trial court ordered appellants to reconstruct and relocate their fence line to conform to the pre-1992 boundary line. On October 1, 1999, appellants filed a motion for clarification of the fence line relocation, adjudication of which was delayed by their then pending motion for reconsideration before this court. This court subsequently denied reconsideration. See Tinlin v. White (Nov. 5, 1999), Carroll App. No. 680, unreported, 1999 WL 1029523.
On October 21, 1999, appellants filed a "notice of compliance" with the trial court. On November 9, 1999, the trial court instructed appellees to advise the court as to the accuracy of the line fence relocation performed by appellants. On November 19, 1999, appellees advised the court that the fence was not correctly relocated. The court convened a status conference on December 30, 1999. Appellants agreed that they would have their surveyor, R.J. Swearingen (Swearingen), meet with the court to review the relocation, prepare a new survey, and set marker pins.
After several attempts to meet with Swearingen failed, the court was advised in April 2000 that he had discontinued his survey business in the area. In May 2000, appellants obtained the services of another surveyor, Ronald L. Smith (Smith), to perform the necessary work. After Smith failed to do the work, the court sua sponte, on August 25, 2000, appointed Carroll County Surveyor and Assistant County Engineer Randy E. Hull (Hull) to perform the necessary survey work. Hull completed the work in October 2000 and forwarded the survey and description of a 0.120 tract.
On January 10, 2001, the trial court filed a judgment entry in aid of execution of its previous January 27, 1997 judgment. The court ordered appellant to reconstruct the line fence according to the survey performed by Hull and quieted title to the 0.120 acre tract in favor of appellees. This appeal followed.
At the outset, the state of each parties' appellate briefs should be noted. Concerning the brief of an appellant, App.R. 16(A) provides:
 "The appellant shall include in its brief, under the headings and in the order indicated, all of the following:
"(1) A table of contents, with page references.
 "(2) A table of cases alphabetically arranged, statutes, and other authorities cited, with references to the pages of the brief where cited.
 "(3) A statement of the assignments of error presented for review, with reference to the place in the record where each error is reflected.
 "(4) A statement of the issues presented for review, with references to the assignments of error to which each issue relates.
 "(5) A statement of the case briefly describing the nature of the case, the course of proceedings, and the disposition in the court below.
 "(6) A statement of facts relevant to the assignments of error presented for review, with appropriate references to the record in accordance with division (D) of this rule.
 "(7) An argument containing the contentions of the appellant with respect to each assignment of error presented for review and the reasons in support of the contentions, with citations to the authorities, statutes, and parts of the record on which appellant relies. The argument may be preceded by a summary.
 "(8) A conclusion briefly stating the precise relief sought."
In this case, appellants' brief lacks the requirements of App.R. 16 divisions (A)(1), (2), (4), (6), and (7) above. Appellants are proceedingpro se. However, in similar cases, this court has previously noted:
 "Although appellant is proceeding pro se, pro se
litigants are bound by the same rules and procedures as litigants who retain counsel. Meyers v. First National Bank of Cincinnati (1981), 3 Ohio App.3d 209, 210, 444 N.E.2d 412. See also Dawson v. Pauline Homes, Inc. (1958), 107 Ohio App. 90, 154 N.E.2d 164. This court has, of course, made some allowances for pro se litigants, such as in the construction of pleadings and in the formal requirements of briefs. There is, however, a limit. `Principles requiring generous construction of pro se filings do not require courts to conjure up questions never squarely asked or construct full-blown claims from convoluted reasoning.' Karmasu v. Tate (1992), 83 Ohio App.3d 199, 206, 614 N.E.2d 827. Furthermore, this court will not become appellant counsel for pro se litigants. Such action would be inherently unjust to the adverse party." Jancuk v. McHenry (Aug. 24, 1999), Mahoning App. No. 95 C.A. 131, unreported, 1999 WL 669503 at *4.
Concerning the brief of an appellee, App.R. 16(B) provides:
 "The brief of the appellee shall conform to the requirements of divisions (A)(1) to (A)(8) of this rule, except that a statement of the case or of the facts relevant to the assignments of error need not be made unless the appellee is dissatisfied with the statement of the appellant."
In this case, appellees' brief also lacks requirements of App.R. 16. It lacks the requirements of divisions (A)(1), (3), (4), (5), (6), (7), and (8). Appellees' brief was prepared and filed by an attorney. The brief does not approach even minimal compliance with the rules of appellate procedure. Moreover, it contains only what purports to be case law concerning "dogs running loose." It contains nothing close to a lucid thought remotely relevant to the facts and issues presented by the case at hand.
Appellants' brief sets forth six assignments of error. Appellants have not argued each assignment separately as required by the appellate rules and, instead, have combined their argument for all assignments. Given appellants' treatment of their assignments of error and in so far as the basis for the resolution of those assignments of error is the same, they will be addressed together. They state, respectively:
 "The trial court erred in finding as correct then accepting the October, 2000, Hull survey and plat, Exhibit A attached to the Judgment Entry dated January 10, 2001, for the relocation of the parties' property boundary line."
 "The trial court erred in granting judgment quieting and conveying title to the 0.120 acre tract described in Exhibit A attached to the Judgment Entry dated January 10, 2001, to Appellees from Appellants."
 "The trial court denied Appellants due process and equal protection of the law, guaranteed by the 14th Amendment to the U.S. Constitution, when it conveyed the entire 0.120 acre tract described in exhibit A attached to the Judgment Entry dated January 10, 2001, to Appellees."
 "The trial court exceeded its jurisdiction by entering an order January 10, 2001, quieting title and conveying approximately 0.060 acre tract east of Appellees barn to Appellees."
 "The trial court's order in aid of executing of judgment dated January 10, 2001 is arbitrary, unreasonable, and capricious which constitutes an abuse of discretion."
 "The trial court's finding that the Hull survey, October, 2000, was correct, its acceptance and incorporation of same into its January 10, 2001, Judgment Entry in aid of execution of judgment constitutes plain error."
On January 27, 1997, the trial court decided that "the true boundary line between the respective properties of these parties is the old, pre-1992 fence line as identified in defendants' [appellants'] own 1992 survey as the `occupation line-existing fence line.'" The survey the court is referring to is the one that appellants had prepared in 1992 by Swearingen. In the record, the Swearingen survey is attached to appellants' June 28, 1993 answer and counterclaim (Docket p. 20), and was made part of appellants' pretrial brief as incorporated by appellants' supplemental list of exhibits filed on December 6, 1996 (Docket pp. 158, 159, 162).
The disputed dividing line between the parties' respective property runs generally in an east/west direction. Appellants' property lies to the north of the line and appellees to the south. The dividing line, asreferenced in the parties' deed descriptions and identified in the Swearingen survey, is a certain "quarter section line," also referred to simply as the "section line." The line runs from west to east and is approximately 965 feet in length. The line begins at a stone and ends at State Route 43 (Steubenville Road).
Prior to 1960, each parties' respective predecessors in title had erected a fence. The fence began at the stone at the western end of the "quarter section line" and extended east approximately 665 feet. However, as the fence extended east it gradually encroached north beyond the "quarter section line," encroaching 9.65 feet at its eastern end. Near the end of the fence, appellees or their predecessors in title built a barn which encroached two feet north of "quarter section line."
In the trial court's January 27, 1997 Opinion and Judgment Entry, the court determined that the true boundary line was a line established by the fence. When Hull resurveyed the property, he drew a boundary line based on where the fence previously stood. The line runs the entire length of the parties' property from west to east and is a total of 965.53 feet in length. The line begins, as did the fence, at the stone at the western end of the "quarter section line" and extends east 665.00 feet. As the line extends east it gradually encroaches north beyond the "quarter section line," as did the fence, encroaching 9.65 feet at the 665-foot mark. The line then continues east another 300.53 feet, ending at State Route 43 (Steubenville Road). The eastern end encroaches 3.90 feet north of the "quarter section line." The area between the "quarter section line" and the new boundary line, as drawn by Hull, is 0.120 acre.
The crux of appellants' argument is that the new boundary line drawn by Hull extends 300.53 feet too far east and beyond the "occupation line-existing fenceline" identified in the Swearingen survey and referred to by the trial court in its January 27, 1997 Opinion and Judgment Entry. Appellants misconstrue the meaning of the court's January 27, 1997 decision.
A reading of the trial court's January 27, 1997 Opinion and Judgment Entry in its entirety supports the accuracy of the Hull survey and the court's adoption of it. The court found "that the true boundary linebetween the respective properties of these parties is the old, pre-1992 fence line as identified in defendants' [appellees'] own 1992 survey as the `occupation line-existing fenceline.'" (Emphasis added.) If the dividing line between the parties' respective properties was limited to the "occupation line-existing fenceline" identified in the Swearingen survey, such a finding would not adequately divide the parties' respective properties because the "occupation line-existing fenceline" extends only 665 of the approximately 965 feet that divides the properties. For appellants' argument to hold true, the court's decision would have to have looked something like this:
 "The court finds and declares that the true boundary line between the respective properties of these parties is the old, pre-1992 fence line as identified in defendants' [appellees'] own 1992 survey as the `occupation line-existing fenceline' and the remaining 301.25 feet of the `quarter section line' that lies to the east of the eastern end of the `occupation line-existing fenceline.'"
The trial court's reference to the "occupation line- existing fenceline" was to serve as the basis for constructing a dividing line that would completely divide the parties' properties. The import of the court's decision is that the dividing line between the parties' properties was to be a line created by where the actual fence once stood and an imaginary line extending beyond the end of the fence to where each parties' property abutted State Route 43 (Steubenville Road).
Appellants argue that the trial court's adoption of the Hull survey effectively exceeds the relief sought by appellees. This is incorrect. Appellees sought to re-establish a dividing line between the parties' properties that was consistent with the fence line created by the erection of the fence. It was never intended that the dividing line end where the actual fence ended. Moreover, part of the reason appellees were seeking to have the dividing line re-drawn was so that they could have access around their barn. If the dividing line were limited only to where the actual fence stood, appellees would be denied access around their barn.
Lastly, the trial court twice gave appellants the opportunity to have a surveyor of their choice do the survey work. On each occasion, appellants' choice did not work out or failed to perform the work. Therefore, appellants' effectively waived any objections to the survey ordered by the court from Hull.
Accordingly, appellants' assignments of error are without merit.
The judgment of the trial court is hereby affirmed.
Vukovich, J., concurs
DeGenaro, J., concurs
[1] A large portion of the facts and procedural history recited herein are borrowed verbatim from this court's decision in Tinlinv. White (Sept. 20, 1999), Carroll App. No. 680, unreported, 1999 WL 771277.