[Cite as *Miller v. Miller*, 2014-Ohio-5127.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
ATHENS COUNTY

ERIC W. MILLER,                          :

    Plaintiff-Appellant,      :       Case No.   14CA6

    vs.                                      :

STEPHANIE L. MILLER,              :       DECISION AND JUDGMENT ENTRY

    Defendant-Appellee.       :

_____

APPEARANCES:

APPELLANT <u>PRO SE</u>:             Eric W. Miller, 23251 Jordan Run Road, Coolville, Ohio

APPELLEE <u>PRO SE</u>:             Stephanie L. Miller, 37557 Pooler Road, Pomeroy, Ohio 45769
_____
CIVIL APPEAL FROM COMMON PLEAS COURT
DATE JOURNALIZED: 11-17-14

ABELE, P.J.

{¶ 1} This is an appeal from an Athens County Common Pleas Court judgment that (1) granted a divorce to Eric W. Miller, plaintiff below and appellant herein, and Stephanie L. Miller, defendant below and appellee herein, and (2) designated appellee the residential parent of the parties' minor child.

{¶ 2} Appellant raises the following assignments of error for review:[1]

FIRST ASSIGNMENT OF ERROR:

"THE COURT ERRED BY ALLOWING THE GUARDIAN AD LITEM REPORT AND RECOMMENDATIONS DUE TO THE GUARDIAN AD LITEM DID NOT MEET THE RULLES [SIC] OF SUPERINTENDENCE FOR THE COURTS OF OHIO RULE 48."

SECOND ASSIGNMENT OF ERROR:

"THE COURT HAS ABUSED IT'S [SIC] DISCRETION BY RULING AGAINST THE MANIFEST WEIGHT OF EVIDENCE."

THIRD ASSIGNMENT OF ERROR:

"THE COURT ERRED BY NOT 'GRANTING DUE PROCESS' AS STATED UNDER THE 14TH AMENDMENT."

FOURTH ASSIGNMENT OF ERROR:

"THE COURT ERRED BY NOT GRANTING 'DUE PROCESS' AND DENIED 'EQUAL PROTECTION OF THE LAWS' AS PROVIDED FOR IN THE UNITED STATES CONSTITUTION AMENDMENT 14 SECTION 1. [SIC]"

FIFTH ASSIGNMENT OF ERROR:

---

[1] Appellant filed a pro se appellate brief that does not contain a separate statement of the assignments of error. See App.R. 16(A)(3). Appellant's brief does, however, contain numbered headings within the body of his brief. We have a policy of affording pro se appellate litigants considerable leniency, and, thus, we construe the numbered headings as the assignments of error.

"THE COURT ERRED BY ABUSING ITS DISCRETION AND BY NOT AFFORDING EQUAL PROTECTION OF THE LAW AS PER THE 14TH AMENDMENT WHEN IT QUOTED O.R.C. 3109.04(F)(2)(a)–THE ABILITY OF THE PARENTS TO COOPERATE AND MAKE DECISIONS JOINTLY, WITH RESPECT TO THE CHILDREN."

SIXTH ASSIGNMENT OF ERROR:

"THE GUARDIAN AD LITEM FAILED TO MEET THE RULES OF SUPERINTENDENCE RULE 48.   THE GUARDIAN AD LITEM KNEW NOT THE RULES THAT GOVERNED HER JOB * * *."

SEVENTH ASSIGNMENT OF ERROR:

"THE COURT ERRED IN IT'S [SIC] REPORT 'MAGISTRATE DECISION: FINDINGS OF FACT AND CONCLUSIONS OF LAW."

EIGHTH ASSIGNMENT OF ERROR:

"THE COURT ERRED IN ITS DISCRETION AND WENT AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE WHEN IT STATED THAT THE APPELLANT 'MADE AN INCREDIBLE LEAP AND CLAIMED POSSIBLE CHILD ENDANGERMENT.'"

{¶ 3} Appellant and appellee married and had one child.   On September 7, 2010, appellant filed a divorce complaint against appellee and requested the trial court to designate him the child's residential parent.   Appellee later counterclaimed for divorce and requested the court to designate her the child's residential parent.   The court subsequently issued an agreed temporary order that granted the parties shared parenting.

{¶ 4} On October 14, 2011, December 14, 2011, December 15, 2011, February 23, 2012, and May 23, 2012, the magistrate held a final hearing regarding the divorce complaint.   The

guardian ad litem testified first and stated that she recommended shared parenting, even though the parties had communication difficulties. The magistrate asked the guardian ad litem "[h]ow realistic is it that the two parties are gonna [sic] be able to conduct shared parenting." The guardian ad litem stated that she did "question that," but she hoped the parties would be able to resolve their communication difficulties. The magistrate then pointed out that the parties have been unable to do so during the pendency of the case.

{¶ 5} The magistrate also asked the guardian ad litem what she would recommend if the court did not agree with her shared parenting recommendation. The guardian ad litem stated that she would recommend that the court designate the appellee the child's residential parent and legal custodian. The magistrate asked the guardian ad litem to explain her reasoning, and she stated, "number one[:] the residence." The guardian further explained that appellee is more "level headed," while appellant has filed "contempt charges ever[y] time" something has not happened perfectly.

{¶ 6} Appellant questioned the guardian ad litem about her experience and investigation and asked if she was aware of Sup.R. 48. She stated: "No, if you can read it to me." Appellant asked the guardian ad litem to explain the extent of her investigation and she stated that she met with appellant, appellee, and the child. She explained that she did not interview the child outside of the parents' presence due to the child's young age (born 2007).

{¶ 7} When appellee's counsel questioned the guardian ad litem, she stated that appellee is home during the day and would be able to provide care for the child. She believes appellee should make final decisions regarding the child and opined that appellant may abuse that authority.

**{¶ 8}** On September 25, 2012, the magistrate issued a forty-four page decision that contained findings of fact and conclusions of law and we summarize the decision as follows. Appellant contacted Meigs County Children Services (MCCS) and law enforcement after he observed bruises on the child's legs. MCCS did not, however, substantiate any abuse or neglect and closed the case. Appellee then took the child to a doctor and the doctor's notes indicated that the bruises were "non-significant minor contusions." The guardian <u>ad litem</u> believed that appellant overreacted to the bruises by contacting law enforcement and MCCS.

**{¶ 9}** The guardian <u>ad litem</u> recommended that the trial court adopt appellee's proposed shared parenting plan. If, however, the court did not determine that shared parenting is in the child's best interest, the guardian <u>ad litem</u> recommended that the court designate appellee the child's legal custodian and residential parent. The guardian <u>ad litem</u> believed appellee is "more level-headed, not quick to jump to rash conclusions, and not abusive of authority." The guardian <u>ad litem</u> also believes that appellant appears "rigid in his interpretation of parenting time and lack flexibility."

**{¶ 10}** Appellant believed that appellee is at fault for the parties' communication difficulties.

> "[Appellant] offered many text messages and emails into evidence to support this claim. He questioned the Guardian <u>ad litem</u> on this issue extensively. At one time the Guardian <u>ad litem</u> stated that she believed [appellee] had reasons for not communicating with [appellant]. Many of the text messages and emails submitted into evidence by [appellant] reflect only his side of the communication; those that contain both parties' communications reflect communication problems by both parties. An example of this is the series of text messages on or about March 28, 2011–neither party was able to place [the child's] needs first; both engaged in critical and demeaning comments."

The magistrate further noted:

> "[Appellant] questioned the Guardian <u>ad litem</u> extensively as to what he perceived to be her biases in the case. He questioned her investigative technique and skills using jargon, such as 'standard for submission,' with which the Guardian <u>ad litem</u> was not familiar. He questioned her as to the number of cases in which she has served as a Guardian <u>ad litem</u>–8, and how many times of those eight (8) cases she recommended custody to the father–5. He argued with the Guardian <u>ad litem</u> as to her description that the bruising on [the child's] leg was on his shin or the front of his leg. * * * * [Appellant] further took issue that the Guardian <u>ad litem</u> did not investigate the matter further as Dr. Clark failed to take measurements of the bruises, note the exact locations of the bruises, and specify the number of bruises. It is unclear what further investigation [appellant] desired the Guardian <u>ad litem</u> to do as she contacted all professionals directly involved in the matter and made contact with both parties. [Appellant] further questioned how much time the Guardian spent with the parties during her investigation."

**{¶ 11}** The magistrate considered all of the R.C. 3109.04(F)(1) best interest factors, as well as the R.C. 3109.04(F)(2) shared parenting best interest factors, and recommended that the court designate the appellee the child's legal custodian and residential parent. The magistrate further recommended that the trial court order appellant to pay $262.60 per month in child support, retroactive to October 14, 2011, the date the final hearing began.

**{¶ 12}** Appellant objected to the magistrate's decision and on January 7, 2014, the trial court overruled appellant's objections, adopted the magistrate's findings of fact and conclusions of law, and granted the parties a divorce. The court determined that it is in the child's best interest to designate appellee the child's legal custodian and residential parent. This appeal followed.

I

<u>PRO SE</u> APPEAL

**{¶ 13}** Before we consider appellant's assignments of error, we observe that appellant is

acting pro se in this appeal. Because we ordinarily prefer to review a case on its merits rather than dismiss it due to procedural technicalities, we afford considerable leniency to pro se litigants. E.g., In re Estate of Pallay, 4th Dist. Washington No. 05CA45, 2006–Ohio–3528, ¶10; Robb v. Smallwood, 165 Ohio App.3d 385, 2005–Ohio–5863, 846 N.E.2d 878, ¶5 (4th Dist.); Besser v. Griffey, 88 Ohio App.3d 379, 382, 623 N.E.2d 1326 (4th Dist.1993); State ex rel. Karmasu v. Tate, 83 Ohio App.3d 199, 206, 614 N.E.2d 827 (4th Dist.1992). "Limits do exist, however. Leniency does not mean that we are required 'to find substance where none exists, to advance an argument for a pro se litigant or to address issues not properly raised.'" State v. Headlee, 4th Dist. Washington No. 08CA6, 2009–Ohio–873, ¶6, quoting State v. Nayar, 4th Dist. Lawrence No. 07CA6, 2007–Ohio–6092, ¶28. Furthermore, we will not "conjure up questions never squarely asked or construct full-blown claims from convoluted reasoning." Karmasu, 83 Ohio App.3d at 206. We will, however, consider a pro se litigant's appellate brief so long as it "contains at least some cognizable assignment of error." Robb at ¶5; accord Coleman v. Davis, 4th Dist. Jackson No. 10CA5, 2011–Ohio–506, ¶14 (considering pro se litigant's brief when it contains "some semblance of compliance" with appellate rules of practice and procedure). In the case sub judice, we believe that appellant's brief contains some cognizable assignments of error that we may consider on the merits. Cooke v. Bowen, 4th Dist. Scioto No. 12CA3497, 2013-Ohio-4771, ¶7.

II

GUARDIAN AD LITEM

{¶ 14} In his first and sixth assignments of error, appellant argues that the trial court erred by considering the guardian ad litem's testimony and recommendation. Appellant complains

that the court should have excluded the guardian <u>ad litem</u>'s recommendation because she did not comply with Sup.R. 48.

{¶ 15} Appellate courts will not reverse trial court decisions to admit a guardian <u>ad litem</u>'s testimony and recommendation unless the court abused its discretion.   <u>Corey v. Corey</u>, 2nd Dist. Greene No. 2013-CA-73, 2014-Ohio-3258, ¶9 (stating that "whether to consider the report of a GAL when the GAL did not fully comply with Sup.R. 48(D) is within a trial court's discretion"); <u>Smith v. Boyd</u>, 3rd Dist. Seneca No. 13-05-49, 2006-Ohio-6931, ¶34; <u>see</u> <u>Nolan v. Nolan</u>, 4th Dist. Scioto No. 11CA3444, 2012–Ohio–3736, ¶26 (concluding that trial court abused its discretion by considering guardian <u>ad litem</u>'s testimony when guardian <u>ad litem</u> failed to even minimally comply with Sup.R. 48); <u>see, e.g.,</u> <u>Estate of Johnson v. Randall Smith, Inc.</u>, 135 Ohio St.3d 440, 2013-Ohio-1507, 989 N.E.2d 35, ¶22 (stating that trial court decisions regarding admissibility of evidence reviewed using abuse-of-discretion standard).   A trial court does not abuse its discretion unless it acts in an unreasonable, arbitrary, or unconscionable manner. <u>Estate of Johnson</u> at ¶22.

{¶ 16} The purpose of a guardian <u>ad litem</u> in a parental rights allocation proceeding is "to provide the court with relevant information and an informed recommendation regarding the child's best interest."   Sup.R. 48(D).   A guardian <u>ad litem</u>'s general duties in such a proceeding include investigating the background of the parents and delivering a report and recommendation to the court regarding the child's best interests.   <u>In re C.D.M.</u>, 4th Dist. Hocking No. 13CA1, 2013-Ohio-3792, ¶25.   Sup.R. 48(D) also outlines more specific duties.   Sup.R. 48(D) is not, however, "the equivalent of [a] rule[] of procedure and ha[s] no force equivalent to a statute." <u>State v. Gettys</u>, 49 Ohio App.2d 241, 243, 360 N.E.2d 735 (1976); <u>see</u> <u>Pettit v. Pettit</u>, 12th Dist.

Fayette No. CA2011–08–018, 2012–Ohio–1801, ¶12 (stating that the superintendence rules are "administrative directives only, and are not intended to function as rules of practice and procedure"). Instead, Sup.R. 48(D) is an "'internal housekeeping rule[] which [is] of concern to the judges of the several courts but create[s] no rights in individual[s].'" In re E.W., 4th Dist. Washington No. 10CA18, 2011-Ohio-2123, ¶12, quoting State v. Gettys, 49 Ohio App.2d 241, 243, 360 N.E.2d 735 (1976).

{¶ 17} This court has interpreted Sup.R. 48(D) as a general guideline for the conduct of the courts that does not create substantive rights. E.W., citing In re K.G., 9th Wayne App. No. 10CA16, 2010–Ohio–4399, ¶11; Allen v. Allen, Trumbull App. No.2009–T–0070, 2010–Ohio–475, ¶31; Sultaana v. Giant Eagle, Cuyahoga App. No. 90294, 2008–Ohio–3658, ¶45. Thus, we have generally refused to conclude that a guardian ad litem's failure to comply with Sup.R. 48(D) constitutes grounds for reversal. In re C.T.L.A., 4th Dist. Hocking No. 13CA24, 2014-Ohio-1550; In re R.S., 4th Dist. Highland No. 11CA29, 2012-Ohio-2016; E.W. Other courts have concluded that a guardian ad litem's failure to comply with Sup.R. 48(D) is not automatic grounds for excluding the guardian ad litem's testimony, report, or recommendation. Corey at ¶10 (rejecting argument that trial court abused its discretion by considering guardian ad litem's report even if guardian ad litem failed to comply with Sup.R. 48(D)); In re E.S., 6th Dist. Ottawa No. OT-14-008, 2014-Ohio-3067, ¶64 (concluding that trial court did not abuse its discretion by admitting guardian ad litem's testimony and report even though appellant complained guardian failed to comply with Sup.R. 48(D)).

{¶ 18} In the case at bar, appellant does not have any substantive right to enforce under Sup.R. 48. Instead, the rule is a general guideline that does not have the force of statutory law.

Thus, any non-compliance with the rule is not grounds for reversal.

{¶ 19} Furthermore, we do not believe that the trial court abused its discretion by considering the guardian ad litem's testimony and recommendation. Appellant extensively questioned the guardian ad litem about, inter alia, her recommendation, her qualifications, and the extent of her investigation. Appellant ensured both the magistrate and the trial court were well-aware that he did not feel the guardian ad litem performed an adequate investigation. Both the magistrate and the trial court rejected appellant's arguments. The trial court, as the fact-finder, is permitted to assign weight to the guardian ad litem's testimony and recommendation and could choose to believe or to disbelieve it. In re M.Z., 9th Dist. Lorain No. 11CA010104, 2012–Ohio–3194, ¶35 (stating that trial court permitted to "believe or disbelieve the guardian's testimony and to consider it in the context of all the evidence before the court"); Hunter–June v. Pitts, 12th Dist. Butler No. CA2013–09–179, 2014–Ohio–2473, ¶21 ("The trial court heard the context and the explanations of the guardian ad litem with regard to her investigation and in support of her recommendations, which were outlined in a 11—page report. * * * [T]he guardian ad litem was questioned by both parents' counsel. The magistrate was entitled to believe or disbelieve her testimony and to consider it in light of all of the other testimony presented at the hearing."). Here, we find nothing unreasonable about the trial court's decision to consider the guardian ad litem's testimony and recommendation.

{¶ 20} Appellant nevertheless asserts that our decision in Nolan v. Nolan, 4th Dist. Scioto No. 11CA3444, 2012–Ohio–3736, requires us to conclude that the guardian ad litem's alleged failures require us to reverse the trial court's decision. In Nolan, the guardian ad litem failed to interview the child, the mother's live-in boyfriend, the child's half-sister, school personnel, and

medical-health providers.   Additionally, the guardian <u>ad litem</u> did not visit either parent's home.

{¶ 21} On appeal, the father asserted that the trial court should have stricken the guardian <u>ad litem</u>'s report and recommendation because the guardian <u>ad litem</u> failed to adhere to Sup.R. 48.   Judge Kline, writing for the court, agreed and reversed the trial court's decision.   However, two other judges concurred only in the judgment.   Also, the court explicitly indicated that its decision is limited to the "specific facts of this case" and that it did not "intend to create a bright-line rule regarding the minimum standards of Sup.R. 48(D)(13)."   <u>Id.</u> at ¶27.   The court stated: "based on the unique facts of this case, we find that the guardian <u>ad litem</u> failed to adequately investigate the [c]hild's situation."   <u>Id.</u>   Thus, the court concluded that the trial court should have stricken the guardian <u>ad litem</u>'s trial testimony and report.   <u>Id.</u>   However, because the court specifically limited <u>Nolan</u> to its facts, we do not find it applicable to the case sub judice.

{¶ 22} Accordingly, based upon the foregoing reasons, we hereby overrule appellant's first and sixth assignments of error.

III

MANIFEST WEIGHT OF THE EVIDENCE

{¶ 23} In his second, fifth, seventh, and eighth assignments of error, appellant asserts that the trial court's decision to designate the appellee the residential parent is against the manifest weight of the evidence.   Appellant additionally challenges certain factual findings set forth in the magistrate's decision.

{¶ 24} An appellate court generally reviews a trial court's judgment involving the allocation of parental rights and responsibilities using the manifest-weight-of-the-evidence standard.   <u>In re P.A.R.</u>, 4th Dist. Scioto No. 13CA3550, 2014-Ohio-802, ¶15; <u>Woody v. Woody,</u>

4th Dist. Athens No. 09CA34, 2010-Ohio-6049, ¶17 and fn.1.   When an appellate court reviews a trial court's decision under this standard, the court "'"weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the [fact-finder] clearly lost its way and created such a manifest miscarriage of justice that the [judgment] must be reversed * * *."'"   Eastley v. Volkman, 132 Ohio St.3d 328, 2012–Ohio–2179, 972 N.E.2d 517, ¶20, quoting Tewarson v. Simon, 141 Ohio App.3d 103, 115, 750 N.E.2d 176 (9th Dist.2001).

{¶ 25} Furthermore, when reviewing evidence under the manifest weight of the evidence standard, an appellate court generally must defer to the fact-finder's credibility determinations. Eastley at ¶21.   As the Eastley court explained:

> "'[I]n determining whether the judgment below is manifestly against the weight of the evidence, every reasonable intendment must be made in favor of the judgment and the finding of facts. * * *
> If the evidence is susceptible of more than one construction, the reviewing court is bound to give it that interpretation which is consistent with the verdict and judgment, most favorable to sustaining the verdict and judgment.'"

Id. quoting Seasons Coal Co., Inc. v. Cleveland, 10 Ohio St.3d 77, 80, 461 N.E.2d 1273 (1984), fn.3, quoting 5 Ohio Jurisprudence 3d, Appellate Review, Section 60, at 191–192 (1978).

{¶ 26} Additionally, deferring to the trial court on matters of credibility is "crucial in a child custody case, where there may be much evident in the parties' demeanor and attitude that does not translate to the record well."   Davis v. Flickinger, 77 Ohio St.3d 415, 419, 674 N.E.2d 1159 (1997).   As the Ohio Supreme Court long-ago explained: "In proceedings involving the custody and welfare of children the power of the trial court to exercise discretion is peculiarly important.   The knowledge obtained through contact with and observation of the parties and

through independent investigation cannot be conveyed to a reviewing court by printed record."
Trickey v. Trickey, 158 Ohio St. 9, 13, 106 N.E.2d 772 (1952).

{¶ 27} Thus, a reviewing court will not reverse a trial court's child custody decision absent an abuse of discretion.  P.A.R. at ¶18.  Generally, an abuse of discretion constitutes more than an error of law or judgment; rather, it implies the court's attitude was unreasonable, arbitrary or unconscionable.  E.g., Landis v. Grange Mut. Ins. Co., 82 Ohio St.3d 339, 342, 695 N.E.2d 1140 (1998); Malone v. Courtyard by Marriott L.P., 74 Ohio St.3d 440, 448, 659 N.E.2d 1242 (1996).  Also, an appellate court may not find an abuse of discretion simply by substituting its judgment for that of the trial court.  State ex rel. Duncan v. Chippewa Twp. Trustees 73 Ohio St.3d 728, 732, 654 N.E.2d 1254 (1995); In re Jane Doe 1, 57 Ohio St.3d 135, 137–138, 566 N.E.2d 1181 (1991).  Furthermore, "[c]ustody determinations are some of the most difficult and agonizing decisions a trial judge must make, and, therefore, appellate courts must grant wide latitude to a trial court's consideration of the evidence."  Id., citing Davis v. Flickinger, 77 Ohio St.3d 415, 418, 674 N.E.2d 1159 (1997).

{¶ 28} R.C. 3109.04(B)(1) requires a trial court that is considering the allocation of parental rights and responsibilities to consider the child's best interest.  R.C. 3109.04(F)(1) states that in determining a child's best interest, a court must "consider all relevant factors, including, but not limited to" the following:

> (a) The wishes of the child's parents regarding the child's care;
> (b) If the court has interviewed the child in chambers pursuant to division (B) of this section regarding the child's wishes and concerns as to the allocation of parental rights and responsibilities concerning the child, the wishes and concerns of the child, as expressed to the court;
> (c) The child's interaction and interrelationship with the
>      child's parents, siblings, and any other person who

may significantly affect the child's best interest;

(d) The child's adjustment to the child's home, school, and community;

(e) The mental and physical health of all persons involved in the situation;

(f) The parent more likely to honor and facilitate court-approved parenting time rights or visitation and companionship rights;

(g) Whether either parent has failed to make all child support payments, including all arrearages, that are required of that parent pursuant to a child support order under which that parent is an obligor;

(h) Whether either parent or any member of the household of either parent previously has been convicted of or pleaded guilty to any criminal offense involving any act that resulted in a child being an abused child or a neglected child; whether either parent, in a case in which a child has been adjudicated an abused child or a neglected child, previously has been determined to be the perpetrator of the abusive or neglectful act that is the basis of an adjudication; whether either parent or any member of the household of either parent previously has been convicted of or pleaded guilty to a violation of section 2919.25 of the Revised Code or a sexually oriented offense involving a victim who at the time of the commission of the offense was a member of the family or household that is the subject of the current proceeding; whether either parent or any member of the household of either parent previously has been convicted of or pleaded guilty to any offense involving a victim who at the time of the commission of the offense was a member of the family or household that is the subject of the current proceeding and caused physical harm to the victim in the commission of the offense; and whether there is reason to believe that either parent has acted in a manner resulting in a child being an abused child or a neglected child;

(i) Whether the residential parent or one of the parents subject to a shared parenting decree has continuously and willfully denied the other parent's right to parenting time in accordance with an order of the court;

(j) Whether either parent has established a residence, or is planning to establish a residence, outside this state.

{¶ 29} In the case at bar, we are unable to conclude that the trial court abused its discretion by designating appellee the residential parent, or that the findings that appellant challenges are against the manifest weight of the evidence. The magistrate's detailed, forty-four page decision examined each of the R.C. 3109.04(F)(1) factors. The magistrate also considered the R.C. 3109.04(F)(2) shared parenting best interest factors. The trial court subsequently adopted the magistrate's decision.

**{¶ 30}** The trial court considered appellant's and appellee's wishes and stated:

> "[Appellant] testified that he prefers shared parenting with an equal allocation of parenting time. If the parties are unable to jointly make decisions concerning [the child], [appellant] wants to have decision-making authority.
> [Appellee] testified that although shared parenting would ideally be in [the child]'s best interest, she does not believe the parties are able to communicate effectively at the present time and cooperate. She attributes much of this to [appellant]—that he wants involved in every decision, including some typical day-to-day ones; that he seeks reasons to communicate with her; and that he is unreasonable in his communication—will text her multiple times within a short period of time expecting a response."

The court also considered the child's wishes and noted that it did not interview the child, neither party requested the court to interview the child, and the child was only three-years-old.

With respect to the child's interactions and interrelationships, the court explained:

> "[The child] has a close, positive relationship with both of his parents. Both are highly invested in his well-being and very involved in his activities. This was recognized by the Guardian <u>ad litem</u> and acknowledged by both parties. He is an only child. [The child] has a close relationship with [appellee]'s parents who live in close proximity and sees them several times per week. [Appellant] has been spending more time with his family during the pendency of this matter, and, therefore, [the child] is spending time with extended family and developing a closer relationship with them. This is beneficial to him."

The court further observed that the child is well-adjusted to his home, school, and community.

**{¶ 31}** The trial court considered the parties' mental and physical health and explained:

> "Both parties and [the child] are in good mental and physical health. Despite [appellant]'s assertions early in the case that [appellee] was demonstrating behavior that raised concerns for him as to her mental health, [the psychologist] opined that neither party demonstrated any signs of psychosis or disturbed mental processes."

Regarding which parent is more likely to honor and facilitate court-approved parenting time rights or visitation and companionship rights, the court found:

> "[B]oth parties are equally likely to honor and facilitate court-approved

parenting time rights. However, the key word is 'court-approved.' Both parties appear equally likely to comply with any court order. The instances of visitation problems and allegations of a denial of parenting time have seemed to always come about due to a lack of clarity and/or the parties 'agreed' to some modification that didn't work out as anticipated. Due to the instances of an 'agreed upon modification' not working out as anticipated and resulting allegations that one party reneged on the deal, neither party trusts the other to honor any verbal agreements."

The court further observed that it had not issued a temporary support order because the parties resolved the matter without court intervention.

{¶ 32} The trial court further considered whether shared parenting is in the child's best interest. It noted that the ability of the parents to cooperate and make joint decisions was the "most troublesome" factor and that the record is "replete with examples of communication difficulties and lack of cooperation." The court further explained:

"Of the two parties, [appellant] is much more assertive and comfortable with communication. * * * [Appellee] is less assertive and becomes more easily frustrated with attempts to negotiate what are sometimes tedious details. [Appellant], through his actions and filings during the pendency of this case, has given indication as to what lengths he will go to achieve his desired outcome. If he's the decision-maker, he will probably run roughshod over [appellee] * * *. If [appellee] is designated as the decision-maker, [appellant] will never cease communicating until he has achieved his desired outcome—there will be no cooperation. Which is why, at some point in time, and probably sooner rather than later, [appellee] will declare they're at an 'impasse' and make the decision thereby cutting off further communication on the topic."

The court also expressed concern with appellant's report to law enforcement and MCCS regarding his belief that the child's bruises resulted from appellee's neglect. The court explained:

"[Appellant] took pictures of [the child]'s legs and it is clear from the pictures that [the child] was posing for these pictures so he was certainly aware that his dad was taking pictures of the bruises on his legs; the photos were not taken surreptitiously. If is further concerning that [appellant] did not take [the

child] to see a doctor given his stated concerns as to the seriousness of the bruising but rather chose to report it to law enforcement despite the passage of time and the opportunities [appellant] had to seek a medical opinion. Had [appellant] taken [the child] to see a pediatrician and had been advised that the bruising was fairly typical for a child of that age his concerns may have been allayed and law enforcement and children's services would never have been involved. He fails to recognize that the investigation by law enforcement/children's services can be traumatic for a child and that his actions seriously undermined any trust between him and [appellee]."

The court additionally noted that appellant later hired a private investigator because he was concerned that appellee was endangering the child. The court stated that "[i]f [appellant] continues in this matter of reporting minor injuries and seeking investigations, it could become trauma-inducing for [the child]."

{¶ 33} The trial court also considered the guardian ad litem's recommendation and noted that she recommended shared parenting, but also expressed concern about "the parties' ability to effectively cooperate and communicate necessary to support shared parenting." The guardian ad litem further recommended that if shared parenting is not possible, then the appellee should be designated the child's legal custodian and residential parent, and the parties should have fairly equal parenting time.

{¶ 34} After considering all of the foregoing factors, the trial court concluded that designating the appellee the child's residential parent and legal custodian is in his best interest.

{¶ 35} The magistrate and the trial court clearly gave due consideration to all of the best interest factors. The parties presented evidence and testimony over the course of five days. Both parties testified, and their testimony shows that both harbor hostility toward the other and are unable to effectively communicate and cooperate. The trial court determined that due to the parties' communication difficulties, shared parenting is not feasible. The court had to designate

one of the parties the child's residential parent and it concluded, based upon all of the evidence and testimony before it, that appellee should be the child's residential parent. We are unable to state that the court reached an unreasonable, arbitrary, or unconscionable decision. Instead, after our review of the transcript, we believe that the trial court acted reasonably by designating appellee the child's residential parent. Even if some evidence favored designating appellant the child's residential parent, we cannot state that, on balance, that the court abused its discretion by designating appellee the child's residential parent.

{¶ 36} To the extent that appellant challenges specific factual findings, we do not believe that he has established that they are against the manifest weight of the evidence. Appellant's challenges are based upon his interpretation of the evidence. He fails to acknowledge that the trial court is entitled to weigh any conflicting evidence and ascertain the facts. We find nothing to indicate that the court clearly lost its way when making its factual findings.

{¶ 37} Appellant additionally argues that the court erred by granting retroactive child support to October 14, 2011. He contends that the parties agreed that "neither child support nor spousal support [shall] be required by either party during the pendency of this action." First, appellant cites no authority to support this argument. Second, appellant did not specifically object to the magistrate's decision on this basis. Therefore, he has waived this issue. State ex rel. Muhammad v. State, 133 Ohio St.3d 508, 2012-Ohio-4767, 979 N.E.2d 296, ¶3 (noting that party waives argument on appeal if party failed to specifically raise issue in objections to magistrate's decision); McClain v. McClain, 4th Dist. Athens No. 10CA53, 2011-Ohio-6101, ¶7; see Civ.R. 53(D)(3)(b)(ii) ("An objection to a magistrate's decision shall be specific and state with particularity all grounds for objection").

{¶ 38} Accordingly, based upon the foregoing reasons, we hereby overrule appellant's second, fifth, seventh, and eighth assignments of error.

IV

DUE PROCESS AND EQUAL PROTECTION ARGUMENTS

{¶ 39} In his third and fourth assignments of error, appellant asserts that the trial court deprived him of due process and equal protection of the law. Although appellant's precise arguments are not clear, he appears to assert that the court deprived him of due process of law "when changing Temporary orders." Appellant states:

> "The lower court's action in the denial of due process when changing Temporary orders is apparent in the May 17[th] 2011 and June 2[nd] 2011 and certainly the amendments to the June 2[nd] 2011 order that was done in hand written form then initialed and dated June 3[rd] without a hearing and as stated before without an agreement. This order was changed after it was filed and against without no evidence [sic] or suggestion of an agreement."

{¶ 40} Appellant also asserts that the trial court deprived him of due process by failing to hold "a hearing to address the changing of parenting time of [the child]," by issuing a "Magistrate's Modified Temporary Order" without holding a hearing, and by failing to permit him to cross-examine appellee's counsel.

{¶ 41} To the extent appellant challenges the trial court's temporary orders, we observe that "[g]enerally, temporary or interim orders in child custody and related proceedings that remain subject to modification pending a final ruling do not constitute final appealable orders under R.C. 2505.02(B)." Day v. Day, 4th Dist. Lawrence No. 10CA18, 2010-Ohio-5266, ¶45, citing Overmyer v. Halm, 6th Dist. Sandusky No. S–08–021, 2009–Ohio–387, ¶13 (finding the trial court's order temporarily modifying father's visitation rights is not a final appealable order

of modification of visitation, but instead an interim order); <u>Shaffer v. Shaffer</u>, 3rd Dist. Paulding No. 11–04–22, 2005–Ohio–3884, ¶8 (finding a temporary order allocating custody to husband is not a final judgment from which appeal could be taken); <u>accord</u> <u>Polacheck v. Polacheck</u>, 9th Dist. Summit No. 26551, 2013-Ohio-5788, ¶44; <u>Kelm v. Kelm</u>, 93 Ohio App.3d 686, 689, 639 N.E.2d 842 (10th Dist.1994). "In contrast, when an order does not contemplate further action and no other related issues remain pending, the order generally constitutes a final order." <u>Day</u> at ¶45. Thus, we are unable to review appellant's challenges to the temporary orders.[2]

{¶ 42} Appellant's argument that the trial court deprived him of due process by refusing to allow him to cross-examine opposing counsel is specious. Appellant cites no authority to support his position that he is entitled to cross-examine opposing counsel in this divorce proceeding. He also does not show how his inability to do so affected the outcome of the proceeding. We therefore summarily reject this argument.

{¶ 43} Accordingly, based upon the foregoing reasons, we hereby overrule appellant's third and fourth assignments of error and affirm the trial court's judgment.

JUDGMENT AFFIRMED.

<u>JUDGMENT ENTRY</u>

It is ordered that the judgment be affirmed and that appellee shall recover of appellant the costs herein taxed.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Athens County

---

[2] Although we decline to address the merits of appellant's arguments regarding the temporary orders, we observe that the trial court informed appellant that it would not have modified temporary orders unless counsel agreed to it or the court held an evidentiary hearing.

Common Pleas Court to carry this judgment into execution.

A certified copy of this entry shall constitute that mandate pursuant to Rule 27 of the

Rules of Appellate Procedure.

Harsha, J. & Hoover, J.: Concur in Judgment & Opinion

For the Court

BY:_____

Peter B. Abele
Presiding Judge

**<u>NOTICE TO COUNSEL</u>**

Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.