[Cite as *In re J.S.*, 2016-Ohio-7833.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

BUTLER COUNTY

| | | |
|---|---|---|
| IN RE: | : | |
| | | CASE NOS. CA2016-07-141 |
| J.S., et al. | : | CA2016-07-142 |
| | : | O P I N I O N |
| | | 11/21/2016 |
| | : | |
| | : | |

APPEAL FROM BUTLER COUNTY COURT OF COMMON PLEAS
JUVENILE DIVISION
Case Nos. JN2013-0123 and JN2013-0124

Michael T. Gmoser, Butler County Prosecuting Attorney, Michael Greer, Government Services Center, 315 High Street, 11th Floor, Hamilton, Ohio 45011, for appellee, Butler County Department of Job & Family Services

Jeanine C. Barbeau, 3268 Jefferson Avenue, Cincinnati, Ohio 45220, guardian ad litem

Marcelina Woods, P.O. Box 922, Mason, Ohio 45040, attorney for children

Mark DeYoung, 224 Reading Road, Mason, Ohio 45040, for appellant

**PIPER, P.J.**

{¶ 1} Appellant, Rhonda Cooley-Smith, appeals a decision of the Butler County Court of Common Pleas, Juvenile Division, denying her motion for legal custody.

{¶ 2} Cooley-Smith provided care for two children who were not biologically hers. The children share the same mother ("Mother"), but have different fathers. Cooley-Smith, who knew Mother's mother, agreed to care for the children when Mother would not. Cooley-

Smith provided care for the firstborn for a few years, and subsequently cared for the younger child when Mother gave birth again. Mother gave each child to Cooley-Smith to care for when each child was approximately two weeks old. Mother would visit the children only a few times a year. While Mother claimed benefits for the children, Cooley-Smith did not receive any child support. Cooley-Smith had no information pertaining to the children's biological fathers.

{¶ 3} The Agency received a report that Cooley-Smith's home had several problems, including no running water, a foul odor, dogs and cats "everywhere," and rotten food in the house. The Agency visited Cooley-Smith, who informed the Agency that she had wanted to file for custody of the children in the past, but was afraid Mother would take the children away rather than lose her benefits. Cooley-Smith also reported that she was without water because she believed her former husband was paying the bills, while he was not. The Agency noted that Cooley-Smith was cleaning the children with warmed water from jugs, and planned to assist Cooley-Smith in restoring her water service.

{¶ 4} The children were adjudicated dependent. Thereafter, the Agency requested that Cooley-Smith have temporary custody of the children with protective supervision to the agency. After the juvenile court granted as much, the Agency created a case plan wherein Cooley-Smith had to meet the children's medical and developmental needs, and participate in a life-skills classes to better provide for the children's needs. At one point, the children were removed from Cooley-Smith's care and placed in the Agency's temporary custody, but they were returned to Cooley-Smith's temporary custody several months later. However, after the children were removed from Cooley-Smith's care on a second occasion, Cooley-Smith was removed from the case plan.

{¶ 5} Cooley-Smith moved for legal custody of the children. However, her motion was opposed by one of the children's biological father, the Agency, and a guardian ad litem

("GAL"), who was appointed for the children. At first, a different GAL served as both the children's GAL and attorney, but later, the children's attorney moved the court to appoint a separate GAL for the children. Just weeks before a hearing on the matter, the juvenile court appointed a different GAL for the children, and the original GAL continued as the children's attorney.

{¶ 6} A hearing was held, and the new GAL submitted her report on the day of the hearing, rather than seven days prior to the start of the hearing as is normally required. The magistrate stayed the proceeding and allowed Cooley-Smith's attorney additional time to cross-examine the GAL, which occurred approximately a month after the first hearing date. The magistrate denied the motion for legal custody, and Cooley-Smith filed objections to the magistrate's decision. After a hearing, the juvenile court overruled the objections. Cooley-Smith now appeals the juvenile court's decision denying her motion for legal custody, raising the following assignments of error.

{¶ 7} Assignment of Error No. 1:

{¶ 8} THE TRIAL COURT ERRED BY ACCEPTING THE GAL'S REPORT AND RECOMMENDATION.

{¶ 9} Cooley-Smith argues in her first assignment of error that the juvenile court erred in accepting the GAL's report because it was not timely filed and in denying her motion to continue the hearing because of the late filing of the GAL's report.

{¶ 10} According to Sup.R. 48(F), a GAL shall prepare a final written report detailing the GAL's recommendations, as well as any "activities performed, hearings attended, persons interviewed, documents reviewed, experts consulted and all other relevant information considered by the guardian ad litem in reaching the guardian ad litem's recommendations." Sup.R.48(F)(1)(c) provides, "unless waived by all parties or unless the due date is extended by the court, the final report shall be filed with the court and made

available to the parties for inspection no less than seven days before the dispositional hearing."

{¶ 11} Sup.R. 48(D)(13) provides that a "guardian ad litem shall make reasonable efforts to become informed about the facts of the case and to contact all parties." In order to provide the court with relevant information and recommendations specific to the child's best interests, "a guardian ad litem shall, at a minimum, do the following, unless impracticable or inadvisable because of the age of the child or the specific circumstances of a particular case:"

> (a) Meet with and interview the child and observe the child with each parent, foster parent, guardian or physical custodian and conduct at least one interview with the child where none of these individuals is present;

> (b) Visit the child at his or her residence in accordance with any standards established by the court in which the guardian ad litem is appointed;

> (c) Ascertain the wishes of the child;

> (d) Meet with and interview the parties, foster parents and other significant individuals who may have relevant knowledge regarding the issues of the case;

> (e) Review pleadings and other relevant court documents in the case in which the guardian ad litem is appointed;

> (f) Review criminal, civil, educational and administrative records pertaining to the child and, if appropriate, to the child's family or to other parties in the case;

> (g) Interview school personnel, medical and mental health providers, child protective services workers and relevant court personnel and obtain copies of relevant records;

> (h) Recommend that the court order psychological evaluations, mental health and/or substance abuse assessments, or other evaluations or tests of the parties as the guardian ad litem deems necessary or helpful to the court; and

> (i) Perform any other investigation necessary to make an informed recommendation regarding the best interest of the

child.

**{¶ 12}** Rules of Superintendence do not have the same force of statute or case law, but are rather purely internal housekeeping rules which do not create substantive rights in individuals or procedural law. *In re B.J.*, 12th Dist. Warren Nos. CA2016-05-036 and CA2016-05-038, 2016-Ohio-7440, ¶ 57. Therefore, noncompliance with the rule is generally not grounds for reversal. *Id.*

**{¶ 13}** The grant or denial of a continuance is a matter entrusted to the broad, sound discretion of the trial court. *Tener v. Tener-Tucker*, 12th Dist. Warren No. CA2004-05-061, 2005-Ohio-3892, ¶ 41. We will not reverse the denial of a continuance absent an abuse of the trial court's discretion. *Id.* An abuse of discretion is more than an error of law or judgment; it implies the trial court's attitude is unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983).

**{¶ 14}** The record indicates that the GAL was not able to comply with several aspects of Sup.R. 48. As previously stated, the GAL did not give the juvenile court her final report until the day of the hearing, and the GAL did not meet several of the goals listed above. However, and despite these deficiencies, we find that the trial court did not err by accepting the report. Nor did the trial court abuse its discretion by denying a motion made by Cooley-Smith to continue the hearing because of the GAL's late report.[1]

**{¶ 15}** The record clearly indicates that the new GAL was appointed only a few weeks before the hearing was set to begin, and was appointed after the original GAL felt it necessary to divide her responsibilities and act only as the children's attorney. Once

---

1. While Cooley-Smith's request for the continuance is not recorded in the transcript provided to this court, the juvenile court's denial of the motion is recorded within the transcript. It appears the continuance was requested in order to provide the GAL with more time to prepare her report. However, the GAL never requested a continuance and stated her belief that she did not need one. The juvenile court, nonetheless, continued the matter for approximately a month in order to allow Cooley-Smith's attorney time before cross-examining the GAL. Thus, when we are addressing whether the juvenile court abused its discretion in denying the continuance, we do so specific to a continuance to permit the GAL more time before filing her report.

appointed, and within the short amount of time before the hearing began, the new GAL was able to perform several acts to acquaint herself with the facts and circumstances of the case.

{¶ 16} For example, the GAL met with the children privately, met with the children's foster parents, and met with Cooley-Smith and her fiancé. The GAL also spoke to several people associated with the case and the children, including ongoing caseworkers, family members of Cooley-Smith and the children, Cooley-Smith's counsel, the children's current attorney/former GAL, and Cooley-Smith's parenting educator. The GAL also reviewed Agency records, reports, service provider reports, school records, as well as the previous GAL's report. Based on these actions, the GAL had a working knowledge of the case and circumstances surrounding the children's removal from Cooley-Smith's care and placement in foster care.

{¶ 17} Further, Cooley-Smith was able to cross-examine the GAL after having additional time and a separate hearing date, and questioned the GAL regarding her report. Thus, the magistrate and trial court were well-aware that some deficiencies may have existed in the GAL's report. The magistrate noted as much in the written decision, and specifically stated that the GAL acknowledged several of the report's deficiencies. As such, the magistrate was fully aware that the report was not as complete as it could have been.

{¶ 18} Even so, the magistrate noted other ways that evidence that may normally have appeared in the GAL's report, such as the children's wishes, could be gleaned from other areas of the record. The facts relied upon by the magistrate and trial court when analyzing the best interest factors were well-established from the record, had been stipulated to, or were not in dispute.

{¶ 19} While the best practice is to adhere to the precepts required by Sup.R. 48, the unique facts and circumstances of this case did not allow as much, and the trial court did not err in accepting the report, nor by denying Cooley-Smith's request to continue the case. As

such, Cooley-Smith's first assignment of error is overruled.

{¶ 20}   Assignment of Error No. 2:

{¶ 21}   J.S. AND M.J. WERE DENIED EFFECTIVE ASSISTANCE OF COUNSEL.

{¶ 22}   Cooley-Smith argues in her second assignment of error that the children were denied effective assistance of counsel to advocate for their wishes.

{¶ 23}   A juvenile who is the subject of a permanent custody proceeding is a party to the proceeding and therefore entitled to counsel. *In re Williams*, 101 Ohio St.3d 398, 2004-Ohio-1500.[2]   In some situations, a GAL can serve a dual role as both GAL and attorney for the child. *Id.*   However, the roles of GAL and attorney are not always compatible as they serve different functions. *In re Baby Girl Baxter*, 17 Ohio St.3d 229, 232 (1985). The role of a GAL is to investigate the child's situation and then ask the court to do what is in the child's best interest, while the role of an attorney is to zealously represent his or her client within the bounds of the law. *Id.*

{¶ 24}   Cooley-Smith asserts that the children received ineffective assistance of counsel because their counsel did not express the children's request for reunification with Cooley-Smith to the juvenile court.   However, the record indicates that counsel for the children did inform the juvenile court that one child was interested in having some contact/visitation with Cooley-Smith, and that the younger child was indifferent to the prospect of recommencing a relationship with Cooley-Smith.   As will be addressed later, the children's attorney stated at the objection hearing that the children wished for a renewed "relationship" with Cooley-Smith.   However, the children's wish for a renewed "relationship" is not the same as a desire to be reunified or have Cooley-Smith become their legal custodian.    As such, the children's wishes were shared with the juvenile court, and the children received

---

2. While Cooley-Smith's appeal is specific to her motion for legal custody, the children were, themselves, the subject of a later permanent custody proceeding, and were thus entitled to counsel.

effective assistance of counsel. Cooley-Smith's second assignment of error is, therefore, overruled.

{¶ 25} Assignment of Error No. 3:

{¶ 26} THE COURT'S DECISION DENYING [COOLEY-SMITH] CUSTODY WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

{¶ 27} Cooley-Smith argues in her final assignment of error that the juvenile court's decision to deny her motion for legal custody was against the manifest weight of the evidence.

{¶ 28} R.C. 2151.353(A)(3) provides that if a child is adjudicated a dependent child, the court may award legal custody of the child to either parent or to any other person who, prior to the dispositional hearing, files a motion requesting legal custody of the child. Legal custody vests in the custodian the physical care and control of the child while residual parental rights and responsibilities remain intact. *In re M.M.*, 12th Dist. Fayette No. CA2010-12-034, 2011-Ohio-3913, ¶ 7. Unlike permanent custody, granting legal custody does not terminate the parent-child relationship. *Id.* A juvenile court "may award legal custody to a nonparent upon a demonstration by a preponderance of the evidence that granting legal custody to the nonparent is in the child's best interest." *In re C.A.*, 12th Dist. Butler No. CA2014-07-165, 2015-Ohio-1410, ¶ 13.

{¶ 29} A juvenile court must base its custody determination on the best interest of the child. R.C. 3109.04. As pertinent to the case at bar, and in determining the best interest of the child, R.C. 3109.04(F)(1) requires the juvenile court to consider all relevant factors, including, but not limited to, the wishes of the child's parents regarding the child's care; the child's wishes and concerns; the child's interaction and interrelationship with the child's parents, siblings, and any other person who may significantly affect the child's best interest; the child's adjustment to the child's home, school, and community; and the mental and

physical health of all persons involved in the situation.

{¶ 30} An appellate court reviews a juvenile court's custody determination for an abuse of discretion. *In re C.A.,* 2015-Ohio-1410 at ¶ 15. The juvenile court's exercise of its discretion in custody matters is entitled to the utmost respect, given the nature of the proceeding and the impact the court's determination will have on the lives of the parties concerned. *Id.* Thus, an appellate court will afford deference to the juvenile court's findings regarding the credibility of the witnesses. *Id.*

{¶ 31} In considering a claim that the juvenile court's decision is contrary to the manifest weight of the evidence, "a reviewing court must determine whether the finder of fact, in resolving conflicts in the evidence, clearly lost his way and created such a manifest miscarriage of justice that the judgment must be reversed and a new trial ordered." *In re X.B.,* 12th Dist. Butler No. CA2014-07-168, 2015-Ohio-1174, ¶ 21. The reviewing court is guided by the presumption that the juvenile court's findings are correct. *Id.* Thus, where an award of custody is supported by a substantial amount of credible and competent evidence, the reviewing court will not reverse the juvenile court's custody determination on the grounds that it is contrary to the manifest weight of the evidence. *Id.*

{¶ 32} Despite Cooley-Smith's argument to the contrary, we find that the juvenile court did not abuse its discretion in denying the motion for legal custody. The court considered the relevant factors and determined that granting legal custody of the children to Cooley-Smith was not in the children's best interests. The record fully supports this conclusion, and the decision was not rendered against the manifest weight of the evidence.

{¶ 33} Regarding the wishes of the children's parents, the juvenile court heard testimony that Mother was not a part of the children's lives except for a brief visit once or twice a year. Mother did not participate in any of the proceedings involving the children, and her wishes were unknown to the court. One child's father also refused to participate in the

- 9 -

proceedings, and his wishes were unknown. However, the other child's biological father participated, and opposed Cooley-Smith having legal custody.

{¶ 34} The court also considered the wishes of the children. As previously stated, the children's attorney told the court at the first hearing that the older child desired to recommence some contact/visitation with Ms. Cooley-Smith, while the younger child had "no desire one way or the other regarding contact with Mr. Cooley-Smith." While the children's attorney stated at a later hearing that the children desired a renewed relationship with Cooley-Smith, the record does not indicate that the children asked to be reunified with Cooley-Smith or that she be their legal guardian. Even if they had, though, the wishes of the children is only one factor for consideration, and would not be dispositive of determining their best interests.

{¶ 35} Regarding the children's interrelationships with others and adjustment to their community, the court considered that the children are doing well in foster care, and have been placed together in the same foster home. The older child is doing well in school and participates in extracurricular activities. The younger child has experienced issues with her behavior and health, but is participating in therapies and services aimed at addressing her issues. The children also have some visitation with one child's paternal grandmother, who also allows the nonbiological child to visit.

{¶ 36} Despite the children spending most of their early lives with Cooley-Smith, the juvenile court heard ample testimony regarding the challenges facing Cooley-Smith and why she is unable to provide appropriate care for the children. The court heard evidence, via a stipulation, that Cooley-Smith's home lacked running water. Additionally, the home lacked cleanliness, and also appropriate bedding. When Cooley-Smith relocated to a different apartment, she experienced problems with bed bugs, the front door was blocked, and the children were within reach of various medications. Cooley-Smith struggled to pay the rent,

and her home was "consistently cluttered." The home was also reported to smell of urine and mold, and there was rotting food found in the home. A worker also had to instruct Cooley-Smith to remove a kitty-litter box from her shower.

{¶ 37} Cooley-Smith, herself, also faced several issues that made parenting difficult. She has several mental health issues, and had not addressed the issues despite assistance from the Agency. Cooley-Smith allowed one of the children to be truant from school, and allowed the other to remain dirty with food caked on her. Cooley-Smith also admitted to allowing the younger child to fall asleep outside while sitting in a wagon on a day where there were freezing temperatures.

{¶ 38} Cooley-Smith, who was approximately 50 years old at the time of the hearing, does not drive due to a traumatizing vehicle accident she witnessed as a child. As such, she relies heavily upon others to assist in her every-day life. Cooley-Smith's sister testified that Cooley-Smith has always needed support from others, and the record indicates that her physical and mental health concerns significantly contribute to that need.

{¶ 39} While Cooley-Smith participated in some parenting classes, she struggled to problem-solve and make independent decisions. The educator assigned Cooley-Smith indicated concern over the children's level of supervision in the home, as well as Cooley-Smith's ability to improve multiple practices all at the same time. Another worker assigned to assist Cooley-Smith reported that Cooley-Smith's mental health is a "large issue" and that her parenting skills are a "concern."

{¶ 40} The court noted that because of several issues, Cooley-Smith had not seen the children regularly since they were removed from her care, and had only seen them two times over the year preceding the hearing. The juvenile court noted that Cooley-Smith lacked "diligence" in trying to see the children during that time, especially when Cooley-Smith missed a series of court hearings over a six-month period.

{¶ 41} Regarding the health of the parties involved, the record is patently clear that Cooley-Smith faces several health issues, including diabetes, arthritis, carpal tunnel syndrome, obsessive-compulsive disorder, and lupus. She also has mental health issues, and is prescribed several medications. The younger child also suffers from health issues, including a gastrointestinal disorder that Cooley-Smith never had diagnosed.

{¶ 42} While the record is clear that Cooley-Smith nobly agreed to raise the children when Mother would not, the record is equally clear that she is unable to properly care for the children. While she loves the children, Cooley-Smith allowed the older child to have poor school attendance, did not ensure the children's cleanliness and proper nutrition, and failed to provide a proper home. Nor did she ensure that the younger child's medical issues were met. These factors, when weighed accordingly with the other factors for consideration, indicate that granting Cooley-Smith legal custody was not in the children's best interests.

{¶ 43} After reviewing the record, the juvenile court did not abuse its discretion in denying Cooley-Smith's motion for legal custody. As such, Cooley-Smith's final assignment of error is overruled.

{¶ 44} Judgment affirmed.

HENDRICKSON, J., concurs.

RINGLAND, J., concurs separately.

**RINGLAND, J., concurring separately.**

{¶ 45} I agree with the majority in the first assignment of error that the juvenile court did not err by accepting the GAL's report or by denying Cooley-Smith's motion to continue. However, I write separately to address the trouble with enforcing minimum standards when the issues are governed purely by Rules of Superintendence.

**{¶ 46}** Principles of justice and fairness are furthered when there are uniform procedures for resolving standard issues that arise during court proceedings. To that end, Sup.R. 48 is important as it presents a standard for the appointment, responsibilities, training, and preparation of written reports for all GALs appearing in domestic relations and juvenile cases.

**{¶ 47}** It is correct that Ohio appellate courts hold that the Rules of Superintendence do not have the same force as a statute or case law and noncompliance with the rules is generally not grounds for reversal. *In re B.J.*, 12th Dist. Warren Nos. CA2016-05-036 and CA2016-05-038, 2016-Ohio-7440, ¶ 57; *Elson v. Plokhooy*, 3d Dist. Shelby No. 17-10-24, 2011-Ohio-3009, ¶ 40; *Miller v. Miller*, 4th Dist. Athens No. 14CA6, 2014-Ohio-5127, ¶ 18; *Allen v. Allen*, 11th Dist. Trumbull No. 2009-T-0070, 2010-Ohio-475, ¶ 31; *Sultaana v. Giant Eagle*, 8th Dist. Cuyahoga No. 90294, 2008-Ohio-3658, ¶ 45. *But see Nolan v. Nolan*, 4th Dist. Scioto No. 11CA3444, 2012-Ohio-3736, ¶ 22–27. A review of the relevant case law reveals that, but for the most isolated of incidents, courts are often left with no meaningful way of remedying violations or ensuring that such violations will not occur in the future. *See Nolan* at ¶ 26-27.

**{¶ 48}** A written rule without any means of ensuring compliance renders the rule essentially meaningless. Thus, while Sup.R. 48 has been authored by the Ohio Supreme Court and approved by appellate courts throughout the state, there is an internal source of conflict when there is no method of ensuring compliance with the rule. Without any process for ensuring compliance, Sup.R. 48 becomes more of a suggestion, as opposed to a rule issued by the Ohio Supreme Court and approved throughout the state.

**{¶ 49}** I would therefore urge the Ohio Supreme Court or the Ohio Legislature to consider methods for allowing courts to remedy violations of Rules of Superintendence and to ensure future compliance with those rules.